**BRITISH AMERICA ASSUR. CO. OF TORONTO, CANADA, v. LAW, UNION & ROCK INS. CO., et al.**

**JOHN S. ALDEHOFF & CO. v. BRITISH AMERICA ASSUR. CO. OF TORONTO, CANADA.**

No. 5609.

Circuit Court of Appeals, Fifth Circuit.

March 31, 1930.

Rehearing Denied April 25, 1930.

party seventy days' notice in writing. In such case such termination shall take effect from the expiration of the notice so given and neither party shall have any claim or claims, right or rights against the other for any alleged loss of prospective profits or commissions or any damage alleged to be caused in the future to the business of either party by such termination. In case of such termination, however, the General Agent will at the request of the Company pursue and complete any unfinished matters of business falling under this Agreement.

"Upon the termination of this Agreement all books, supplies, maps, surveys and documents containing the records of the business of the Company shall be the property of the Company and shall be promptly delivered to the Company on demand and the General Agent is bound and hereby agrees to allow the Company full liberty to inspect and take notes of all information as to the company's liability or other details of its business which is contained in any books, maps or documents which belong to the General Agent.

"The General Agent agrees not to disturb the business which shall be on the books of the Company at the time this Agreement may be terminated by either party and not to solicit the renewals of said business and to recognize that the same belongs to the Company and to permit the Company to continue in full and peaceable possession of the same and of all the agencies in the territory covered by this agreement and any violation of this condition shall render the General Agent liable in damages to the Company."

Further that, on or about the 17th day of February, 1923, defendants John S. Aldehoff & Co., gave notice to plaintiff of the termination of said contract, and at or about the same date took over the agencies in the said states, entered into an agreement and conspiracy with the other defendants herein, Law, Union & Rock Insurance Company and Safeguard Insurance Company, to deliver to them said business, and would undertake and endeavor to and would solicit all of the local agents of plaintiff in said states, to cancel out insurance then outstanding which had been written in the name of plaintiff, and place it with said defendant companies, all in violation of said contract, and which was by the defendants carried out as far as possible, and that plaintiff thereby suffered a loss of business in said states of the reasonable market value of $100,000. Plaintiff further alleged an indebtedness against John S. Aldehoff & Co. on account of the sum of $3,-

E. G. Senter and R. W. Mayo, both of Dallas, Tex. (E. G. Senter and R. W. Mayo, both of Dallas, Tex., on the brief), for British America Assurance Co.

Geo. S. Wright, of Dallas, Tex. (Thompson, Knight, Baker & Harris and Geo. S. Wright, all of Dallas, Tex., on the brief), for Law, Union & Rock Ins. Co., Safeguard Ins. Co., Aldehoff, and Moseley.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Plaintiff brought this suit to recover damages for the alleged breach of a contract of agency and upon open account for sums alleged to have accrued while the defendants John S. Aldehoff & Co. were acting as its general agents for soliciting fire insurance in the states of Texas and Oklahoma. Petitioner alleged:

It entered into a contract with said defendants in December, 1915, which had continued until about the 17th day of February, 1925 (1923), when it was broken by said defendants. That it had been satisfactory and profitable, and had resulted in the establishment of approximately fifty agencies in the state of Oklahoma and one hundred in Texas. That among the provisions of said contract were the following:

"This agreement may be terminated at any time by either party giving the other

500, against which they had remitted only $916.48.

Plaintiff prayed for judgment in the sum of $100,000 actual damages, and $50,000 exemplary damages, and $3,500, as for balance due on account.

Defendants John S. Aldehoff & Co., after excepting to the various articles of the petition on the ground that they disclosed no cause of action, denied the allegations generally, but admitted:

That they had acted as general agents from the year 1911 to February 16, 1925 (1923), and in turn charged plaintiff with entering into a conspiracy with Hines Bros. of Atlanta, Ga., and Crum & Forster, a New York corporation, to injure and destroy the business of defendants. That, among the provisions of the contract between plaintiff and the said John S. Aldehoff & Co., were the following:

"Said general agents shall have full power and authority on behalf of the company to make contracts of insurance, to countersign, issue, make indorsements upon and cancel policies of the company, to ask for, demand and receive, sue for and give valid receipts for all premiums or other sums of money due the company in respect of any such contract of insurance, or in respect of the business transacted through the general agency, to accept and acknowledge notices and process of law, to accept service and all legal process on behalf of the company, and generally to do all such acts, matters and things incidental to the above powers as shall be necessary for the doing and carrying out of the company's business in said territory.

"That the general agent shall provide necessary office accommodations and office staff in the City of Dallas and at his own expense keep insurance maps, records of policies issued, dates of expiration, etc.; that the general agent shall at his own expense, employ and keep special agents, well trained in fire hazards, and approved by the company; that the general agent shall inspect all risks, appoint all agents and be responsible to the company for all premiums on business written in said territory, furnish to the company at its home office daily reports, abstracts, of business written, cancellations and indorsements to be furnished weekly, if requested by the company; that the general agent should submit at all times for inspection by the company all books and accounts, agents' daily reports and correspondence, * * * and many other provisions."

That under said agreement they had appointed the various agents, all of whom had reported to defendants at Dallas, Tex., "and not to the home office or any other representative of the plaintiff." That some time prior to February 1, 1923, plaintiff placed its business in said states "under the control and direction of Hines Bros., as southern managers and Crum & Forster as United States managers." That these defendants were not advised of such changes until they read in the Insurance Field of February 1, 1923, the announcement of Crum & Forster's acquisition of the controlling interest of the British America Assurance Company. That they then attempted to ascertain what the effect of this arrangement would be by telegrams, and were led to believe that their business would not be disturbed. That they subsequently learned that plaintiff had sent messages to other persons indicating that defendants' general agency would soon be terminated and they would be deprived of their business, and that on February 16, 1923, defendants received a letter from F. M. Gund, manager of the Western Department of Crum & Forster, reading as follows:

"You have probably read that Crum & Forster have purchased the British America Assurance Company, and it will, therefore, be in order for you to report all Oklahoma business of this company to the Western Department at Freeport, Illinois.

"We presume that you have been advised by the Toronto office of the new arrangement and that you are now forwarding daily reports, indorsements, policies, etc., to this office.

"Will you please acknowledge receipt of this letter, together with your understand (ing) and oblige. * * *"

That, not having received any advice from plaintiff that they should make reports as suggested in this letter, and desiring to obtain "definite information as to the course to be pursued by plaintiff," on the same date, February 16th, they wired the Toronto office as follows: "Important we should know earliest moment whether company is to be operated in future upon same commission plan as heretofore. Is it to be considered to change existing plan of our reporting to head office?" To which plaintiff replied: "Your wire. Please communicate direct with Crum & Forster."

That, inasmuch as defendants had always transacted business with the Toronto office, they did not communicate with Crum & For-

ster, but the various local agents who reported to defendants as general agents began to communicate with them over the telephone as to whether defendants were going to continue to represent the British America Assurance Company or not; whereupon on the said 16th day of February, 1923, defendants wired plaintiff as follows: "Manoeuvers Hines Brothers especially disconcerting to agents and perplexing to us. We insist upon definite telegraphic reply from you our wire, February 12th respecting future operations. We are without any specific advices" —and on the same day received this reply: "Please notify audit bureau in Texas to forward all daily reports, cancelled policies, indorsements, etc. to Hines Bros., Spring & Harris Streets, Atlanta, Georgia, and audit bureau in Oklahoma to forward daily report canceled policies, indorsements, etc. to F. M. Gunn, Manager, Old Colony Building, Freeport, Illinois."

That there was an audit bureau in the state of Oklahoma, but none in the state of Texas. That, under the method of doing business prior to the date of said telegram, the Oklahoma reports were made to the audit bureau, which in turn forwarded the daily reports, cancellations, renewals, etc., to defendants. That the reference to the Texas bureau meant the local agents should forward such reports direct to Hines Bros. of Atlanta instead of to defendants in accordance with the provisions of their contract of general agency and "in accordance with the universal course of dealing between plaintiffs and defendants during the entire life of said agency." That the last-quoted telegram was a direct breach and violation of the general agency contract between the plaintiff and these defendants and deprived them of all authority as general agents in said states. That "it would have been impossible for these defendants to have continued a general agency business on behalf of the plaintiff with the local agents under the control and authority of other representatives of the plaintiff, with the local agents of the plaintiff sending all reports, indorsements and cancellations to Hines Bros. on Texas business and to F. M. Gund on Oklahoma business." Further, that plaintiff had breached said contract by not giving the seventy days' notice required to terminate the same, thereby causing defendants great damage and injury, and as a consequence was not entitled to rely upon any of the provisions thereof. That, if plaintiff had not breached said contract but had terminated it according to its provisions, they (defendants) would have

been entitled to an overriding commission, and because of said breach they should recover the same as damages, and, "if there was no valid satisfaction of plaintiff's claim, the defendants allege said damage as an offset or counterclaim against plaintiff."

Further, that the plaintiff, through one of its agents and representatives, had slandered one of the defendants, John S. Aldehoff, by saying, in substance, "John S. Aldehoff is a bad man and will not pay his debts," and from which said defendant. John S. Aldehoff was entitled to recover the sum of $40,000 actual damages and $10,000 exemplary damages.

In response to the demand for $3,500 on open account, defendants alleged that they had sent an itemized statement of the account with a check in full settlement for the balance due of $916.48, which had been accepted by the plaintiff, and it was estopped to claim anything thereon.

Defendants prayed that plaintiff's demand be rejected, for judgment on their cross-claim in the sum of $40,000 actual damages, and for $10,000 exemplary damages.

Defendants Law, Union & Rock Insurance Company and the Safeguard Insurance Company answered jointly by pleading the general issue and averring that they had been joined with the defendants John S. Aldehoff & Co. in an effort to coerce the latter "into making settlement upon an alleged claim of an agency balance claimed to be due. * * *"

The case was tried before a jury, and both sides moved for an instructed verdict. The court directed a verdict for the plaintiff in the sum of $1,343.65, being the amount of the overriding commission which the defendants had deducted from the remittance made after the agency had been terminated on February 16, 1923, but otherwise rejected the claims for damages by the plaintiff and by the defendants John S. Aldehoff & Co., respectively, and dismissed the Law, Union & Rock Insurance Company and Safeguard Insurance Company from the suit. Plaintiff alone has appealed.

Without finding it necessary to review the mass of evidence in the case, including the letters and telegrams above quoted in the pleadings, we conclude that the lower court correctly found that the plaintiff had breached the contract by taking away from Aldehoff & Co. the right to have daily reports, cancellations, renewals, etc., made through their office. The proof shows that

this was essential to the maintenance of their business, and that a general agency could not function successfully if denied this right. Defendants endeavored repeatedly to obtain satisfactory information from plaintiff as to whether it intended to make any changes with respect to the agency, but got no definite reply until the receipt of the message of February 16, 1923, quoted hereinabove, directing that the audit bureau in Texas forward all daily reports, cancellations, indorsements, etc., to Hines Bros. of Atlanta, Ga., and those from Oklahoma to F. M. Gund, manager, Freeport, Ill. As a matter of fact, there was no audit bureau in Texas, but we think it clear that plaintiff intended the local agents in that state should report to Hines Bros. instead of to defendants, as they had done in the past. Promptly upon receipt of these instructions, defendants wired to plaintiffs, canceling the contract, as follows:

"Wires and correspondence from representatives of your company we regard as a total breach by you of our contract and we shall hold you liable for damages resulting to us therefrom Stop As you have breached the contract and therefore put an end to it we shall not act under it nor recognize your right to do so."

This action of plaintiff and response of defendants we think put an end to the contract, for plaintiff, having required the defendants to submit to a method of doing business which was destructive of rights under their contract essential to its performance, and having thereby itself first broken the agreement in the manner indicated, could not then be permitted to recover damages from the defendants because of their refusal to be further bound. See 13 C. J. p. 613, verbo "Contracts," § 661 et seq. and authorities in footnote; Anvil Mining Company v. Humble, 153 U. S. 540, 14 S. Ct. 876, 38 L. Ed. 814.

In any event, putting aside the matter of its own breach, a careful examination of the record we think discloses that the plaintiff has failed to prove any damages with that degree of certainty essential to a recovery.

We also think that the court below was correct in holding that the defendants were not entitled to take credit for the overriding commissions of $1,343.65. That allowance was contemplated only in event the contract was terminated in the manner provided therein after notice of seventy days.

As to the amount claimed upon open account, we conclude from the evidence in this record that the defendants were not entitled to deduct the following items from their remittance, to wit: February 28, 1919, $351.-44; February 19, 1920, $9.53; February 28, 1921, $455.13; and February 28, 1923, $152.98—or a total of $969.08. These were sums paid out for taxes upon certain portions of the business placed with the defendants through what were termed "treaty companies." Correspondence was had between the parties thereto with reference to these items at the time they accrued, and the defendants, after stating their contention, left the matter "entirely to your (plaintiff's) decision." Plaintiff declined to allow defendants credit therefor, and there the matter ended. Under such circumstances we do not think the defendants could, after the lapse of several years and the contract had been terminated, go back and charge the plaintiff with these amounts. Defendants pleaded accord and satisfaction against the reopening of these items upon the ground that it had sent the plaintiff a statement and letter of remittance with a check in full payment, which it had accepted; but there was no dispute about the items which they paid. They simply deducted from the amount admitted to be due credits to which they were not entitled. No estoppel can arise from the payment of a debt admitted to be due.

The judgment appealed from is therefore set aside, and the case is remanded for further proceedings not inconsistent with the views herein expressed.