**ABC MUSIC CORP. et al., Plaintiffs,**

**v.**

**Maurice JANOV and Charles Weintraub, doing business under the fictitious firm name and style of Mode Records, Limited, and Mode Records, Limited, a California corporation, Defendants.**

**Civ. No. 505–58.**

United States District Court
S. D. California,
Central Division.

Aug. 22, 1960.

**444**

Abraham Marcus, and Jason H. Ross, Beverly Hills, Cal., for plaintiffs.

Cyrus Levinthal, Los Angeles, Cal., for defendants.

MATHES, District Judge.

In this action several copyright proprietors invoke the jurisdiction of this court under 28 U.S.C. § 1338(a) to recover damages for defendants' failure to pay statutory royalties as required by the so-called "compulsory licensing" provisions of § 1(e) of the Copyright Act. 17 U.S.C. § 1(e).

In the main the facts are undisputed. Plaintiffs are music publishing companies and the copyright proprietors of the several musical compositions involved. Their respective claims of copyright have been validly registered in the United States Copyright Office and are subject to the protection provided by the Copyright Act. 17 U.S.C. § 1 et seq. Since filing notice of copyright and paying the recording fee, each plaintiff has either manufactured or licensed the manufacture of records of each of the musical compositions, all of which are "popular songs."

Defendants, doing business as "Mode Records, Limited", were engaged for a period of months during 1957 in the business of manufacturing and distributing records. From time to time during this period they sent to one Harry Fox, an agent who had acted for plaintiffs and many other music publishers in such matters, notices of defendants' intention to record the composition in question (see Appendix), in accordance with § 1(e) of the Copyright Act.

Section 1(e) provides that:

"(W)henever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof * * *." 17 U.S.C. § 1(e).

Further that:

"In case of failure of such manufacturer to pay to the copyright proprietor within thirty days after demand in writing the full sum of royalties due at said rate at the date of such demand, the court may award taxable costs to the plaintiff and a reasonable counsel fee, and the court may, in its discretion, enter judgment therein for any sum in addition over the amount found to be due as royalty in accordance with the terms of this title, not exceeding three times such amount." Ibid.

In response to each notice, Fox sent defendants a form acknowledgment which provided in part:

"You have advised me in my capacity as Agent and Trustee for said Publisher that you wish to use said copyrighted work under the compulsory license provision of Section 1(e) of the Copyright Act upon the parts of instruments serving to reproduce mechanically the copyrighted work.

"Upon your doing so, you shall have all the rights which are granted to, and all the obligations which are imposed upon, users of said copyrighted work under the compulsory license provision of the Copyright Act, after use or permission or knowing acquiescence by the said Publisher in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the copyrighted work (viz: phonograph records) by another person, except that with respect to records thereof manufactured by you:

"1. You shall pay royalties and account to me * * * quarterly on the basis of records manufactured; and

"2. For such records manufactured, the royalty shall be the statutory rate; and

"3. This license covers and is limited to one particular recording of the musical composition set forth above as performed by the artist on the record number set forth above * * *."

In December of 1957, plaintiffs demanded an accounting of records manufactured by defendants, and payment of the royalties then due. Defendants did not supply any accounting, nor did they pay any royalties. Thereupon plaintiffs caused an audit to be made of defendants' books to determine the number of records which had been manufactured, and this action followed.

The parties are in agreement that defendants are liable under § 1(e) to pay a royalty of 2 cents for each "part" manufactured, and that the number of parts manufactured by defendants is correctly set forth in the complaint. See Appendix. The parties also agree that a "part" is a single reproduction by mechanical means of a single musical composition. So where the mechanical reproductions involved are long-playing records and reproduce several compositions on each side of the disc, there may be several "parts" per side.

The single point of controversy here is whether exemplary damages, which the court may award in its discretion pursuant to § 1(e), should be imposed. While plaintiffs seek treble damages of 6 cents per part manufactured over, above and in addition to the statutory royalty of 2 cents, and costs and reasonable attorneys fees as well, defendants *per contra* contend that such an award should only be made against those who willfully infringe and manufacture records without any intention of paying royalties, *i. e.*, a situation tantamount to fraud.

For circumstances in extenuation, defendants point to the undisputed testimony that they had never been connected with the record industry prior to this venture; that basically they were investors in the enterprise, leaving the management to a person familiar with the record business on whom they relied completely; that proper notice was given to the copyright proprietors; that defendants were not kept informed of the royalty situation; and that neither of them received anything by way of compensation or profit for their investment. In sum the argument is that defendants were at the very worst unwise and imprudent, and not willful and fraudulent, in causing a situation to arise which resulted in failure to pay the royalties as required by law.

The "compulsory licensing" provisions of § 1(e) are in part the outgrowth of White-Smith Music Publishing Co. v. Apollo Co., 1908, 209 U.S. 1, 17–18, 28 S.Ct. 319, 52 L.Ed. 655, decided prior to enactment of the Copyright Act of 1909 (35 Stat. 1075). There it was held that the production and sale of a pianola roll, which had mechanically reproduced a copyrighted musical composition, did not constitute copying, and hence no action for infringement would lie.

Because of this ruling in the White-Smith case, several prominent composers complained to the Congress that the products of their musical talents were being exploited quite profitably by record and music roll manufacturers, while they

as composers received nothing by way of royalties or other compensation. See Henn, The Compulsory License Provisions of the U. S. Copyright Law 3 (General Revision of the Copyright Law, Study No. 5, Senate Subcommittee on Patents, Trademarks and Copyrights of the Committee on the Judiciary, 1956).

To remedy this situation, the draftsmen of the 1909 Act set out to provide recognition of some right on the part of copyright proprietors to control the recording and mechanical reproduction of their musical compositions. However, the small record companies feared that one large concern, then holding long-term contracts with many music publishers for a large number of widely popular musical compositions, would eventually monopolize the entire record business, and persuaded the Congress, after debating several alternative proposals, to limit the recognition of recording rights to the compulsory licensing scheme. Id., at 1–15.

In short, as the statutory history reveals, the compulsory license scheme of the 1909 Act was designed "to reach a balance between adequate protection for the proprietor of a musical work on the one hand and the avoiding of 'a great music monopoly' on the other." Shapiro, Bernstein & Co. v. Remington Records, 2 Cir., 1959, 265 F.2d 263, 269.

While changes and amendments have been proposed and in some cases adopted over the years, the compulsory license provisions, as now embodied in § 1(e) of Title 17 of the U.S.C., have remained substantially unchanged since the 1909 Act. See Henn, The Compulsory License Provisions of the U. S. Copyright Law, supra, at 21–36.

The result is that the practical effect of § 1(e) is to limit the bargaining rights of the copyright proprietor in the following particulars: (1) as to the persons with whom he may refuse to contract; (2) as to the times when he may contract; (3) as to the duration of the contract; and (4), most importantly, as to the maximum royalty he may receive, irrespective of the commercial value of the particular musical composition. See Blaisdell, The Economic Aspects of the Compulsory License 91 (General Revision of the Copyright Law, Study No. 6, Senate Subcommittee on Patents, Trademarks and Copyrights of the Committee on the Judiciary, 1956).

These are of course severe limitations upon the control and use of private property and, by way of compensation for these restrictions upon *jus disponendi*, the Congress justly placed strict obligations upon those who choose to make commercial use of the copyrighted musical compositions of others, and provided additionally that this court may in its discretion increase the award to treble damages.

The precise question at bar is whether on the facts of this case plaintiffs are entitled to an increased award of damages over, above and in addition to the statutory royalty of two cents per part manufactured. While reported decisions discussing this particular problem which have come to my attention are few, they give some guides to decision as to the circumstances under which exemplary damages are properly awarded.

In Leo Feist, Inc. v. American Music Roll Co., E.D.Pa.1918, 253 F. 860, the District Court made a small award of exemplary damages for failure to comply with the compulsory licensing provisions and stated:

"The court may, no doubt, take into consideration the intent and acts of the defendant in failing to make payment and its willful disregard of the provisions of the (Copyright) act. * * * There was nothing in * * * the case indicating an intention of concealment or piracy in the use of the copyrighted works." 253 F. at page 861.

This case, it should be noted, was decided over forty years ago, long before the record industry had achieved its present major place in the economy of the United States. See Blaisdell, The Economic Aspects of the Compulsory License, supra, at 96–97, 103–106; see also Kaplan &

Brown, II Copyright and Unfair Competition, 432–436 (Temp. ed. 1958).

In a more recent case, Miller v. Goody, D.C.S.D.N.Y.1954, 125 F.Supp. 348, 351–352, a suit for copyright infringement in which § 1(e) was used as a measure of the damages awarded under § 101(e) of the Copyright Act, Judge Dawson stated:

"(T)he plaintiff shall be entitled to recover, in lieu of profits and damages, a royalty as provided in Section 1, subsection (e) of the Act, which may be tripled if the person who has utilized the copyright work has not given notice to the copyright proprietor and the copyright office of his intention to use the work." 125 F.Supp. at page 351.

And only last year, in Shapiro, Bernstein & Co. v. Remington Records, supra, 265 F.2d at pages 269–271, the Court of Appeals for the Second Circuit, while reversing the District Court on another point, upheld an award of treble damages over and above the two-cent-per-part royalty, because defendants had failed to file a notice of intent to manufacture and had refused to produce evidence that would accurately determine the number of parts manufactured. In describing the nature of the defendants' liability, the Court of Appeals declared:

"When the defendants availed themselves of the benefit of the compulsory licensing scheme of the Copyright Act by manufacturing records without following the statutory obligations of notice and reports, they placed themselves in much the same position as a trustee who commingles his own property with like property of others." 265 F.2d at page 271.

It appears then that the tendency today is not to look for "piracy" or "willfulness" as a requisite to an increased award, but rather to hold that mere violation of the statutory obligations imposed upon record manufacturers who appropriate to themselves a compulsory license under § 1(e) is sufficient to justify a treble-damage award. See Edward B. Marks Corp. v. Foullon, D.C.S.D.N.Y. 1948, 79 F.Supp. 664, 667–668; cf.: Shapiro, Bernstein & Co. v. Goody, 2 Cir., 1957, 248 F.2d 260, 266, reversing Miller v. Goody, D.C.S.D.N.Y.1956, 139 F.Supp. 176, certiorari denied 1958, 355 U.S. 952, 78 S.Ct. 536, 2 L.Ed.2d 529; Davilla v. Brunswick-Balke Collender Co., 2 Cir., 1938, 94 F.2d 567, 570, modifying D.C., S.D.N.Y.1937, 19 F.Supp. 819, 820, certiorari denied 1938, 304 U.S. 572, 58 S.Ct. 1040, 82 L.Ed. 1536.

In dealing with this problem the distinction between actions for infringement under § 101(b) (17 U.S.C. § 101 (b)) and suits for statutory royalties under § 1(e) of the Copyright Act should be kept in mind, because in terms of remedy the two are quite different. Under the former an accounting of profits based upon sales is available to aid a determination of appropriate damages; while under a compulsory license, the royalty fixed by statute limits the pecuniary remedy of the copyright proprietor, irrespective of the profits which may be involved.

Since § 1(e) fixes the precise royalty recoverable for the compulsory license, it seems only just that treble damages should be awarded for a violation of § 1(e), in the absence of a showing of good cause to the contrary. And the burden of making such a showing of good cause, once violation has been proved, should, of course, rest upon the defendant. That is to say, since § 1(e) permits anyone to exploit the property of the copyright owner for commercial advantage and limits the royalty payable for such use, those who appropriate a compulsory license without complying strictly with the requirements of § 1(e), do so at their peril; and their liability for failure to perform punctually the obligations which the Act imposes may be onerous in the extreme.

Here defendants in effect contend that their violation of the statute was merely the result of folly. But under § 1(e) the folly of manufacturers is precisely one of the dangers to which copyright pro-

prietors are continually exposed. Once their compositions have been reproduced on records, the copyright proprietors must thereafter deal alike with the reputable and the disreputable, the prudent and the foolish, and financially sound and the marginally financed.

Add the further consideration that the disreputable and the imprudent and the marginally financed not only have it within their power to deny the copyright proprietor the benefits of his property by failure to provide an accounting and to pay royalties due, but also, by flooding and diluting the market, to deter sound and prudent manufacturers from making records of the composition.

Here it would be a hollow victory indeed, if all that plaintiffs could recover after being forced to sue would be the statutory-two-cent royalty. They were entitled to that without bringing this action.

For the reasons stated, judgment will be entered in favor of plaintiffs and against defendants for a royalty of "2 cents on each * * * part manufactured", plus treble damages, together with taxable costs and a reasonable counsel fee of two thousand dollars.

## Appendix

### Schedule of Compulsory Licenses Appropriated by Defendants

| Name of Plaintiff | Name of Composition | Number of Parts Manufactured |
|---|---|---|
| ABC Music Corp. | I Hadn't Anyone Till You | 2792 |
| AQV Music Corp. | That's All | 3537 |
| American Academy of Music, Inc. | Blue Lou | 3502 |
| Atlantic Music Corp. | Yardbird Suite | 3502 |
| Barton Music Corp. | Nancy (with the Laughing Face) | 3200 |
| Irving Berlin Music Corp. | Always | 3501 |
|  | Sittin' in the Sun | 899 |
| Bourne, Inc. | Give a Little Whistle | 3200 |
|  | Gone with the Wind | 3537 |
|  | Let's Fall in Love | 2836 |
|  | Little Orphan Annie | 2836 |
|  | Lullaby of the Leaves | 1616 |
|  | These Foolish Things | 5994 |
|  | Unforgettable | 2500 |
| Bregman, Vocco & Conn, Inc. | Jumpin' at the Woodside | 3502 |
|  | Makin' Whoopee | 7204 |
|  | This is Always | 3537 |
|  | When the Sun Comes Out | 899 |
| Buxton Hill Music Corp. | It's All Right with Me | 2810 |
| Chappell & Co., Inc. | Have You Met Miss Jones | 3502 |
|  | I Could Write a Book | 2800 |
|  | I Didn't Know What Time It Was | 2498 |
|  | It Never Entered My Mind | 3501 |
|  | I Was Doing All Right | 2800 |
|  | Love Is Here to Stay | 1616 |

Schedule of Compulsory Licenses Appropriated by Defendants

| Name of Plaintiff | Name of Composition | Number of Parts Manufactured |
|---|---|---|
| Chappel & Co., Inc. | My Ship | 3501 |
| | Nobody's Heart | 3537 |
| Criterion Music Corp. | Here's Pete | 3200 |
| Crestview Music Corp. | Nature Boy | 2498 |
| | When the World Was Young | 2800 |
| | It Happened Once Before | 3537 |
| De Sylva, Brown & Henderson, Inc. | Nevertheless | 2696 |
| Famous Music Corp. | Down the Old Ox Road | 2800 |
| | Easy Living | 899 |
| | Stella by Starlight | 3501 |
| Leo Feist, Inc. | How About You | 2515 |
| Frank Music Corp. | Baubles, Bangles & Beads | 5700 |
| Harms, T. B. Company | Little Girl Blue | 2804 |
| | Long Ago and Far Away | 2836 |
| | The Song Is You | 3502 |
| | This Can't Be Love | 2804 |
| | What Is There to Say | 2800 |
| Harral Music | New Soft Shoe | 2792 |
| Jefferson Music Company | No Moon at All | 2805 |
| Leeds Music Corp. | I'll Remember April | 3502 |
| Mayfair Music Corp. | Basin Street Blues | 2493 |
| | I'm Glad There Is You | 3502 |
| | S'posin' | 2804 |
| | There Will Never Be Another You | 5153 |
| Melody Lane Publications | Cherry | 2798 |
| Miller Music Corp. | (I'm in Heaven When I See You Smile) Diane | 2805 |
| | If You Ever Change Your Mind | 3537 |
| | Takin' a Chance on Love | 3537 |
| | What Can I Say After I Say I'm Sorry | 2771 |
| Mills Music, Inc. | As Long as I Live | 3537 |
| | Dinah | 3502 |
| | When It's Sleepy Time Down South | 2800 |
| Modern Age Music Co. | Old Man Rebop | 2771 |
| Edwin H. Morris Company, Inc. | I See Your Face Before Me | 3501 |
| | Memphis in June | 899 |
| | My Shining Hour | 2800 |
| | Tenderly | 3501 |

450

### Schedule of Compulsory Licenses Appropriated by Defendants