FAMOUS MUSIC CORPORATION, Shapiro, Bernstein & Co., Inc., Joy Music, Inc. and Mills Music, Inc., Plaintiffs,

v.

SEECO RECORDS, INC., Defendant.

Civ. No. 137-52.

United States District Court
S. D. New York.

Nov. 22, 1961.

See also 166 F.Supp. 549.

Julian T. Abeles, New York City, for plaintiffs; John S. Clark, New York City, of counsel.

Aranow, Brodsky, Bohlinger, Einhorn & Dann, New York City, for defendant; David A. Drexler, Robert J. Ward, New York City, of counsel.

LEVET, District Judge.

This action is based on alleged violation of the Copyright Law, Title 17 U.S.C. § 1(e) and § 101(e).

The proposed findings of fact, conclusions of law and briefs of the parties

having been received, the court, after considering the pleadings, evidence, exhibits, briefs and stipulation of the parties now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

Findings of Fact

1. The plaintiffs invoke the jurisdiction of this court upon the ground that the Copyright Law of the United States is directly involved herein.

2. Plaintiffs, Famous Music Corporation, Shapiro, Bernstein & Co., Inc., Joy Music, Inc. and Mills Music, Inc. are corporations incorporated under the laws of the State of New York; defendant Seeco Records, Inc. is also incorporated under the laws of the State of New York.

3. The musical composition of plaintiff Famous Music Corporation entitled "Love Letters," was duly copyrighted by said plaintiff as an original published work on May 29, 1945; a certificate of the registration thereof was issued by the United States Register of Copyrights to said plaintiff on June 1, 1945; and at all times since said plaintiff has been and still is the sole proprietor of all rights, title and interest in and to said copyright in said musical composition. (Ex. 2)

4. The musical composition of plaintiff Shapiro, Bernstein & Co., Inc. entitled "(There'll Be Blue Birds Over) The White Cliffs of Dover," was duly copyrighted by said plaintiff as an original unpublished work on October 22, 1941, and as a published work on November 28, 1941; certificates of the registration thereof were duly issued by the United States Register of Copyrights to said plaintiff on October 22 and November 28, 1941 respectively; and at all times since said plaintiff has been and still is the sole proprietor of all rights, title and interest in and to said copyrights in said musical composition. (Ex. 4).

5. The musical composition of plaintiff Joy Music, Inc. entitled "Love Is a Simple Thing," was duly copyrighted by said plaintiff as an original unpublished work on April 2, 1952, and as a published work on May 1, 1952; certificates of registration thereof were issued by the United States Register of Copyrights to said plaintiff on April 2 and May 2, 1952 respectively; and at all times since said plaintiff has been and still is the sole proprietor of all rights, title and interest in and to said copyrights in said musical composition. (Ex. 6).

6. The musical composition of plaintiff Mills Music, Inc. entitled "One Morning in May," was duly copyrighted by said plaintiff as an original published work on December 27, 1933; a certificate of the registration thereof was issued by the United States Register of Copyrights to said plaintiff on January 8, 1934; and at all times since said plaintiff has been and still is the sole proprietor of all rights, title and interest in and to said copyright in said musical composition. (Ex. 8).

7. None of said plaintiffs having theretofore used said respective musical compositions for the manufacture of parts of instruments serving to reproduce the same mechanically, but having licensed others to do so, said plaintiffs did, therefore, duly file notice thereof in the Copyright Office of the United States. (Exs. 2, 4, 6, 8).

8. Prior to March 10, 1958 and on or about April 10, 1957, one Harry Fox, agent of plaintiffs, notified defendant that, by reason of defendant having deliberately and persistently defaulted over an extended period of time in rendering accountings and making royalty payments for phonograph records manufactured by defendant serving to reproduce the copyrighted musical compositions of the music publisher principals of said Fox, including plaintiffs herein, no further licenses would be issued by plaintiffs to defendant and, accordingly, any such uses thereafter made by defendant of plaintiffs' copyrighted musical compositions would have to be made under the compulsory license provisions of the Copyright Act. (Ex. 10).

9. That under date of March 10, 1958, defendant notified each of plaintiffs

of its intention to use its musical composition, the respective subject matters of this action, upon the part of instruments serving to reproduce the same mechanically, pursuant to the compulsory license provisions of the Copyright Act, Title 17 U.S.C. (Ex. 1;[1] see also admissions in paragraphs Second and Sixth of defendant's answer).

10. On March 12, 1958, each plaintiff acknowledged receipt of said notice from defendant above referred to and required defendant, pursuant to Title 17 U.S.C. § 1(e), to furnish a report under oath on the 20th day of each month of the number of parts of instruments manufactured during the previous month serving to reproduce mechanically said respective plaintiff's musical work and to make payments of the royalties becoming due on the parts manufactured during each month upon the 20th day of the next succeeding month. (Ex. 1).

11. Defendant thereafter, and under and pursuant to the said compulsory license provisions of said Copyright Act, made use of each of said plaintiff's said copyrighted musical composition in the manufacture of parts of instruments serving to reproduce said respective composition mechanically. (Exs. 3,[2] 5, 7, 9).

12. After the said notices by defendant, referred to in paragraph 9 hereof, and after receipt by defendant of the notices from each plaintiff, referred to in paragraph 10 hereof, defendant rendered periodical reports to each plaintiff, in each instance reciting that it was a statement of royalties due upon phonograph records manufactured by defendant, serving to mechanically reproduce the said musical composition of said respective plaintiff, covering the specified period of manufacture; and upon each of said reports there was endorsed a certificate under oath to the effect that the same was a correct statement of the royalties due said plaintiff for the period stated, as required to be made by defendant in compliance with the compulsory license provisions of the Copyright Act. (Exs. 3, 5, 7, 9).

13. In spite of said recital and endorsement upon each of the reports referred to in paragraph 12 hereof, defendant's computations in said reports were in fact based upon the number of phonograph records it allegedly sold instead of those manufactured by it; and the checks tendered by defendant to plaintiff's agent in payment of the royalties purportedly owing by defendant to each plaintiff were likewise based upon the number of phonograph records sold by defendant instead of those manufactured by it. (Exs. 3, 5, 7, 9; see also defendant's answer, paragraphs Fourth, Eighth, Tenth, Eleventh).

1. Exhibit 1 marked in evidence was misplaced by the parties to this action. On November 16, 1961, the parties entered into a stipulation the pertinent portion of which is as follows:

"It Is Hereby Stipulated and Agreed by and between the attorneys for the respective parties hereto, as follows:

"1. That the annexed copy of a notice dated March 10, 1958, on the letterhead of Seeco Records, Incorporated, and the annexed copy of a communication of March 12, 1958, from Harry Fox, Agent and Trustee to Seeco Records, Incorporated, comprise true copies of 'Plaintiffs' Exhibit 1' marked in evidence upon the trial of the above-entitled action."

2. Exhibit 3 marked in evidence was misplaced by the parties to this action. On November 16, 1961, the parties entered into a stipulation, the pertinent part of which is as follows:

"It Is Hereby Stipulated and Agreed by and between the attorneys for the respective parties hereto, as follows:

\* \* \* \* \*

"2. That the annexed statements of Seeco Records, Inc., dated respectively June 20, 1958, August 27, 1958 and September 20, 1958, are three of the fourteen statements marked in evidence as 'Plaintiffs' Exhibit 3' upon the trial of the above-entitled action. The contents of the other eleven statements, comprising said exhibit, are the same as the annexed three statements except that the dates are different, the titles of the compositions other than 'Love Letters' are different, the quantity of records manufactured is different, the quantity of records sold is different, and the amount in the last column is different."

14. Between on or about May 24, 1957 and on or about March 18, 1958, plaintiffs' agent Fox returned to defendant each of its reports, together with checks totalling the approximate sum of $12,603.04 received by Fox, as agent on behalf of his music publisher principals, including plaintiffs, and with said checks and reports, said Fox notified defendant to the effect that the reports and checks were returned because they were not in compliance with the provisions of the Copyright Act by reason of the fact that in each report the computations were based on records sold instead of on those manufactured, and, further, demanded in each of said communications, on behalf of said agent's music publisher principals, including plaintiffs, the respective copyright proprietors of said musical compositions above referred to, that in compliance with the provisions of Section 1(e) of the Copyright Act, defendant make payment of the full sum of royalties due at the rate of 2¢ on each such part manufactured at the date of said demand. (Ex. 10).

15. On or about May 13, 1958, plaintiffs' agent sent the following communication to the defendant:

"This will acknowledge receipt of your communication of May 8th, with enclosed check in the amount of $3,419.26 and statements. Said check and statements fail to comply with the requirements of the Copyright Act in the same respects as previous statements which were returned to you. In addition, the present statements fail to comply with the requirement of the Act and our demands that you report and pay royalties upon the 20th of the next succeeding month on parts manufactured during any month. I note also that you have arbitrarily deducted from your remittance the amount of $530.54 as previously paid, although the amount has not been paid by you.

"For approximately a year I have been returning your similar statements and checks because of their failure to comply with the compulsory license provisions of the Copyright Act. During this entire period you have obviously been more than satisfied to retain such statements and checks and you have done so without rendering proper statements and making payment of the full amount of your obligation.

"All efforts on my part over this period of time to induce you to conform to such provisions of said Act having been of no avail, I cannot continue to return your statements and checks and thereby permit the amount of your obligation substantially to increase, with no assurance that a judgment when obtained will be collectible. Accordingly, during the pendency of the actions now being brought against you, I will henceforth retain your statements and deposit your checks without prejudice, however, to the respective claims of my principals for the balance of your obligation to them, and without further communication to you to such effect.

"I must insist that your statements and checks be remitted monthly as required by the Copyright Act." (Ex. 11).

16. On or about October 23, 1958, plaintiff's agent wrote the following letter to the defendant:

"This will acknowledge receipt of your statement for the month ending *August 31, 1958* and your check dated October 17, 1958 in the amount of $1,075.54.

"For reasons set forth in my letter to you of May 13th, I am retaining your check in payment of the royalty you concede to be due on the quantity of records you account for as having been sold, but without prejudice to my principals' demands for royalties on all other records of the respective compositions manufactured by you." (Ex. 11).

17. (a) During the same period during which defendant made the reports

above referred to, it also recorded each of the said respective compositions of the plaintiffs, manufactured master recordings thereof on tapes, and made and exported copies thereof to foreign countries as a means through which records thereof were subsequently pressed.

(b) Defendant in the course of its business shipped tape recordings, containing renditions of plaintiffs' compositions, to persons in foreign countries, which recordings were used by said persons to manufacture phonograph records.

(c) In order to make use of said tape recordings upon phonograph records, these foreign persons perform the following acts outside the United States:

1. The tape is made into an "acetate" disk.

2. The "acetate" is made into a metallic "master."

3. The "master" is used to manufacture a "mother."

4. The "mother" is used to manufacture a "stamper."

5. The "stamper" is used to manufacture phonograph records.

18. Except as hereinbefore stated, defendant has not accounted or tendered payment to plaintiffs for the royalties claimed to be due plaintiffs for records manufactured by defendant serving to reproduce mechanically plaintiffs' said musical compositions; neither has defendant reported or accounted to plaintiffs for any royalties claimed by plaintiffs on the recordings mentioned in Finding 17 hereof.

19. The defendant has raised the defense of accord and satisfaction. The facts in reference thereto are as follows:

(a) During the period from 1944 to 1957, defendant paid respective plaintiffs herein on the four selections involved on records sold, rather than on those manufactured, and plaintiffs then made no objections. The periodic royalty reports on the compositions in suit submitted to plaintiffs' agent indicated that each was based upon sales only. (Exs. 3, 5, 7, 9).

(b) Plaintiffs' agent returned defendant's statements and checks because, among other reasons, they were based on sales instead of on the number of parts manufactured, on the following dates:

| Date | Check | Exhibit |
|---|---|---|
| May 24, 1957 | $1,515.74 | 10 |
| | 594.34 | |
| June 21, 1957 | 2,496.46 | 10 |
| July 22, 1957 | 1,503.98 | 10 |
| September 25, 1957 | 1,263.90 | 10 |
| November 7, 1957 | 910.08 | 10 |
| December 11, 1957 | 1,566.08 | 10 |
| March 18, 1958 | 2,752.46 | 10 |

(c) On May 8, 1958, defendant sent plaintiffs' agent statements and a check for $3,419.26, stating: "Pursuant to the provisions of the Copyright Law of 1909, we are enclosing herein the statement and corresponding check for royalties due your principals." (Ex. 10). On May 13, 1958, plaintiffs' agent wrote defendant protesting as before against the method of computation but indicating that the agent was retaining the check of $3,419.26, saying in part: " * * * I cannot continue to return your statements and checks and thereby permit the amount of your obligation substantially to increase, with no assurance that a judgment when obtained will be collectible. Accordingly, during the pendency of the actions now being brought against you, I will henceforth retain your statements and deposit your checks without prejudice, however, to the respective claims of my principals for the balance of your obligation to them, and without further communication to you to such effect." (Ex. 11).

(d) Subsequently, plaintiffs' agent, after having received defendant's statements and checks, retained the checks and notified defendant as follows:

"For the reasons set forth in my letter to you of May 13th, I am retaining your check in payment of the royalty you concede to be due on the quantity of records you account for as having been sold, but without prejudice to my principals' demands for royalties on all other records of the respective compositions manufactured by you." (Ex. 12).

The dates and amounts of such checks so retained and the dates of letters from the agent to the defendant were as follows:

| Date of Check | Amount | Date of Letter |
|---|---|---|
| May 29, 1958 | $1,807.66 | June 5, 1958 |
| June 30, 1958 | 1,230.68 | July 3, 1958 |
| July 21, 1958 | 1,934.20 | July 31, 1958 |
| September 12, 1958 | 847.74 | September 29, 1958 |
| November 6, 1958 | 1,378.56 | November 14, 1958 |
| December 31, 1958 | 2,068.58 | January 6, 1959 |
| January 28, 1959 | 1,479.02 | February 13, 1959 |
| February 17, 1959 | 1,077.90 | February 20, 1959 |
| May 5, 1959 | 1,334.98 | May 12, 1959 |
| May 5, 1959 | 1,278.92 | May 12, 1959 |
| May 29, 1959 | 875.64 | June 2, 1959 |
| June 8, 1959 | 435.90 | June 16, 1959 |
| July 30, 1959 | 735.32 | July 30, 1959 |
| August 28, 1959 | 1,126.28 | August 31, 1959 |
| September 11, 1959 | 509.00 | September 22, 1959 |
| September 30, 1959 | 762.42 | October 19, 1959 |
| October 27, 1959 | 661.48 | November 10, 1959 |
| February 3, 1960 | 2,362.20 | February 5, 1960 |
| February 19, 1960 | 1,255.58 | February 26, 1960 |
| March 16, 1960 | 922.70 | April 8, 1960 |
| April 28, 1960 | 1,186.92 | May 12, 1960 |
| May 11, 1960 | 843.04 | May 12, 1960 |
| July 5, 1960 | 1,066.64 | July 20, 1960 |
| | 2.56 | |
| August 30, 1960 | 598.00 | September 1, 1960 |

(Ex. 12).

———◆———

(e) The defendant, on October 24, 1958, by way of reply to plaintiffs' agent's letter of October 23, 1958, wrote in part: " * * * we respectfully refer you to our letter of May 27th, 1958; and affirm our statement therein that all checks sent to you in payment of royalties are tendered in full settlement of all claims by you with respect to the recorded musical compositions listed on the accompanying statement." (Ex. 11).

20. On or about August 19, 1958, the summons in this action was served on defendant.

21. The defense, insofar as it was based upon custom and usage, was withdrawn by defendant's counsel.

### Discussion

The relative statutes involved are Title 17 U.S.C. § 1(e) and Title 17 U.S.C. § 101(e).

The pertinent parts of Title 17 U.S.C. § 1(e) are as follows:

" * * * And as a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof; and the copyright proprietor may require, and if so the manufacturer shall furnish, a report under oath on the 20th day of each month on the num-

ber of parts of instruments manufactured during the previous month serving to reproduce mechanically said musical work, and royalties shall be due on the parts manufactured during any month upon the 20th of the next succeeding month. * * *

"In case of failure of such manufacturer to pay to the copyright proprietor within thirty days after demand in writing the full sum of royalties due at said rate at the date of such demand, the court may award taxable costs to the plaintiff and a reasonable counsel fee, and the court may, in its discretion, enter judgment therein for any sum in addition over the amount found to be due as royalty in accordance with the terms of this title, not exceeding three times such amount."

The pertinent part of Title 17 U.S.C. § 101(e) is as follows:

" * * * Whenever the owner of a musical copyright has used or permitted the use of the copyrighted work upon the parts of musical instruments serving to reproduce mechanically the musical work, then in case of infringement of such copyright by the unauthorized manufacture, use, or sale of interchangeable parts, such as disks, rolls, bands, or cylinders for use in mechanical music-producing machines adapted to reproduce the copyrighted music, no criminal action shall be brought, but in a civil action an injunction may be granted upon such terms as the court may impose, and the plaintiff shall be entitled to recover in lieu of profits and damages a royalty as provided in section 1, subsection (e), of this title: * * *."

Title 17 U.S.C. § 1(e) clearly requires payment of "a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof."

Under the facts of this case, defendant is clearly obligated to make the royalty payments required.

■ Custom and usage may not be invoked to relieve defendant of the clearcut obligations imposed by the application of the statute. Cudahy Packing Co. v. Narzisenfeld, 2 Cir., 1924, 3 F.2d 567, 572; Lehigh Coal & Nav. Co. v. Compagnie Generale Transatlantique, 2 Cir., 1926, 12 F.2d 337, 338; Basey v. Gallagher, 20 Wall. 670, 87 U.S. 670, 684, 22 L.Ed. 452 (1874); In Re Northern Indiana Oil Co., 7 Cir., 1951, 192 F.2d 139, 143; Cobin v. Midland Mutual Life Insurance Co., 9 Cir., 1958, 260 F.2d 92, 96. See also Drone, Copyright 506 (1879); Weil, Copyright Law, 431 (1917).

This defense asserted by the same defendant in another action was stricken by Judge Murphy of this court. Southern Music Publishing Co., Inc. v. Seeco Records, Inc., Civil No. 154–35, D.C.S.D. N.Y., May 12, 1960, 200 F.Supp. 704.

In Shapiro, Bernstein & Co. v. Remington Records, Inc., 2 Cir., 1959, 265 F.2d 263, 269, Burger, Circuit Judge, stated: " * * * the number manufactured, not the number sold, is the royalty criterion * * *."

■ The fact that plaintiffs may have accepted payments for a certain period on the basis of sales does not require a continuance of a waiver of payments of the royalties on the records manufactured but not sold. No agreement for the continuation of such acceptance has been shown.

■ Under the facts and circumstances as above set forth, the retention of the checks referred to in Finding No. 19 hereof did not constitute an accord and satisfaction:

(a) There is no indication of an express or implied contract to accept the lesser sum based on *sales* only. In fact, the creditor constantly protested.

(b) There was no doubt that the plaintiffs were concededly entitled to at least the amount tendered.

(c) There was no proof of a *bona fide* dispute since the statute was clear and unambiguous.

(d) The defendant repeatedly sent checks after being notified by plaintiffs' agent that the checks would be retained and in effect credited on account.

There is no doubt that the essentials of a valid contract must be present to establish an accord and satisfaction. Ferryboatmen's Union v. Northwestern Pac. R. Co., 9 Cir., 1936, 84 F.2d 773; Natural Gas Pipeline Co. of America v. Harrington, 5 Cir., 1957, 246 F.2d 915, cert. denied, 1958, 356 U.S. 957, 78 S.Ct. 992, 2 L.Ed.2d 1065; Salisbury v. Tibbetts, 10 Cir., 1958, 259 F.2d 59. See also 1 C.J.S. Accord and Satisfaction § 3. It is the rule in New York. Mance v. Hossington, 1912, 205 N.Y. 33, 98 N.E. 203.

The plaintiffs were concededly entitled to the amounts retained. As to these amounts there was no dispute. Payment of that which the creditor is already entitled to receive will not effect a satisfaction since it furnishes no consideration for the creditor's relinquishment or extinguishment of his claim. British American Assur. Co. v. Law, Union & Rock Ins. Co., 5 Cir., 1930, 39 F.2d 416; Alexander H. Kerr & Company v. Fooks, D.C.W.D.Arkansas, 1956, 145 F.Supp. 503, appeal dismissed, 8 Cir., 1957, 245 F.2d 245; Occidental Life Ins. Co. v. Eiler, 8 Cir., 1942, 125 F.2d 229, cert. denied, 1942, 316 U.S. 688, 62 S.Ct. 1278, 86 L.Ed. 1760.

This principle has been also enunciated by the New York courts. Schuttinger v. Woodruff, 1932, 259 N.Y. 212, 181 N.E. 361; Mance v. Hossington, supra; Leidy v. Procter, 1st Dept., 1929, 226 App.Div. 322, 235 N.Y.S. 101. As stated by O'Brien, J., in the Schuttinger case, supra:

"* * * Compensation by the debtor up to an amount concededly due, and rejection by him of a balance representing the subject of dispute, even when accepted by the creditor, cannot be regarded as anything in excess of a partial payment, * * *." (259 N.Y. p. 216, 181 N.E. p. 362)

In the Mance case, supra, Chase, J., wrote:

"The payment of an admitted liability is not a payment of or a consideration for an alleged accord and satisfaction of another and independent alleged liability. Ryan v. Ward, 48 N.Y. 204; Nassoiy v. Tomlinson, 148 N.Y. 326, 42 N.E. 715; Laroe v. Sugar Loaf Dairy Co., 180 N.Y. 367, 73 N.E. 61.)" (205 N.Y. p. 36, 98 N.E. p. 204)

See also Hudson v. Yonkers Fruit Co., 1932, 258 N.Y. 168, 173, 179 N.E. 373, 80 A.L.R. 1052.

There is no doubt that to achieve a valid accord and satisfaction of an unliquidated claim for a lesser amount than the creditor states to be due, there must be a genuine or bona fide dispute honestly believed in by the debtor. Schuttinger v. Woodruff, supra; Eames Vacuum Brake Co. v. Prosser, 1898, 157 N.Y. 289, 51 N.E. 986; Schnell v. Perlmon, 1924, 238 N.Y. 362, 144 N.E. 641, 34 A.L.R. 1023; Fuller v. Kemp, 1893, 138 N.Y. 231, 237, 33 N.E. 1034, 20 L.R.A. 785. Although a claim may be honestly disputed upon a matter of law, Schnell v. Perlmon, supra; Woodruff v. Woodruff, 1873, 52 N.Y. 53, the element of good faith must still be present.

An actual and substantial difference of opinion between the parties must exist as to the amount due, or the liability of the debtor, that is to say, the creditor must assert the validity of the claim and the debtor must in good faith deny all or some part of it. 1 C.J.S. Accord and Satisfaction § 32(b) (2), citing Schuttinger v. Woodruff, supra.

In a New York case in which the defendant was notified in advance, that if it sent a check it would receive for it nothing but credit on account and the defendant chose to send the checks, the court held that no accord and satisfaction existed. Laroe v. Sugar Loaf Dairy Co., 1905, 180 N.Y. 367.

In Horan v. John F. Trommer, Inc., Supreme Court, New York County, 1954, 15 Misc.2d 347, 351, 137 N.Y.S.2d 26, 30,

aff'd, 1st Dept., 1954, 283 App.Div. 774, 128 N.Y.S.2d 595, the court discussed the effect of statutory changes under the New York law as follows:

"In New York, consideration is no longer required to support a promise in writing signed by the person to be discharged. Under Section 243 of the Debtor and Creditor Law, a written release of a claim or debt operates as a discharge even in the absence of consideration; and Section 33, subd. 3, of the Personal Property Law provides that a promise in writing and signed by the promisor constitutes a valid contractual obligation, even in the absence of consideration for the promise. The accompanying letter had the effect of an attached voucher and acceptance of the check was tantamount to acceptance of the accompanying letter and its terms. Had plaintiff wished to accept the check while still refusing to accept the accompanying conditions as spelled out in the letter, it was incumbent upon him to register this refusal. * * * "

In our case, there was a definite refusal to accept the accompanying conditions of the defendant and this refusal was registered.

In another New York case, Glen Navigation Corporation v. Trodden, 1950, City Court of City of New York, 97 N.Y.S.2d 228, 230, which involved a check to which was attached a voucher that indicated that said check was in full settlement of account, the court stated:

" * * * The plaintiff unquestionably was entitled to the commissions actually received and its acceptance of that amount could not, in the absence of any agreement in writing at least, Personal Property Law, § 33, relieve the steamship company from the payment of the balance. That there was no agreement orally or in writing on the plaintiff's part to accept the lesser sum is indicated by its letter of February 13, insisting upon further payment. In those circumstances, in accepting the check the plaintiff neither agreed to give up anything else nor did it give up anything. Cf. the discussion in Hudson v. Yonkers Fruit Co., 258 N.Y. 168, 179 N.E. 373, 80 A.L.R. 1052. * * * "

Here, the court believes that the defendant was not disputing the plaintiffs' claims in good faith. The statute as indicated was unambiguous. The rule with respect to the statute versus custom and usage was plain. The evident fact was that defendant was seeking to *induce* plaintiffs to base their royalty collections on records sold rather than on those manufactured.

The defense of accord and satisfaction must therefore be rejected.

Thus, in regard to the records which were the subject of periodic royalty reports, the number of records manufactured is the royalty criterion.

■ The preparation of the tapes (which are sent to persons abroad to be used by said persons to manufacture phonograph records), which contain renditions of plaintiffs' compositions, is a violation of Section 101(e).

The act of the defendant in producing the tapes of plaintiffs' compositions in the United States clearly involves defendant as a joint tort-feasor in "manufacture." Reeve Music Co. v. Crest Records, Inc., D.C.E.D.N.Y., 1959, 190 F.Supp. 272, aff'd 2 Cir., 1960, 285 F.2d 546. As Judge Abruzzo stated in the district court decision in Reeve:

"The Court of Appeals for the Second Circuit has held on numerous occasions that the infringement of a copyright is a tort and all persons concerned therein are jointly and severally liable. See Gross v. Van Dyk Gravure Co., 230 F. 412; American Code Co. v. Bensinger, 282 F. 829; and Ted Browne Music Co. v. Fowler, 290 F. 751.

"The Court of Appeals for the First Circuit in Sammons v. Colonial Press, 126 F.2d 341, citing Gross v. Van Dyk Gravure Co., supra, with

approval, also holds that on familiar principles of tort liability all persons who unite in the infringement of a copyright are jointly and severally liable for the damages resulting therefrom.

"None of these four cases last cited involved the mechanical recording of a song, but the legal principle expounded is applicable to the case at bar in that they all involve copyright infringements." (190 F.Supp. p. 276)

It is plain that the act of defendant here was a part of the manufacture. In the Reeve case, supra, in the court below, Judge Abruzzo pointed out:

"A leading case on copyright infringement is Belford, Clarke & Co. v. Scribner, 144 U.S. 488, 12 S.Ct. 734, 36 L.Ed. 514. Although this case involves the printing of books and not the manufacturing of phonograph records, it holds (at page 507, 12 S.Ct. 734) that both the printer and publisher of the books are liable to the owner of a copyright for an infringement in that the printers were sharers in the profits realized from the sale of the books and were *participes criminis* with the publisher in the infringement." (190 F.Supp. p. 276)

When the Reeve case, supra, came to the appeals court, Judge Swan, after referring to G. Ricordi & Co. v. Columbia Gramophone Co., D.C.S.D.N.Y., 1920, 270 F. 822, 826, wrote:

" * * * This is not a holding, as the defendants seem to believe, that all the first eight steps must be taken to constitute a defendant a manufacturer. * * *

"Under § 101(e), on the other hand, 'manufacture' is an act of infringement, and 'courts have long recognized that infringement of a copyright is a tort, and all persons concerned therein are jointly and severally liable as such joint tortfeasors.' Ted Browne Music Co. v. Fowler, 2 Cir., 290 F. 751, 754. We

think it plain that here, whether or not the separate act performed by each defendant constitutes 'manufacture,' the two defendants, acting in concert, 'manufactured' the infringing discs." (285 F.2d p. 548)

A holding in Capitol Records v. Mercury Records Corporation, 2 Cir., 1955, 221 F.2d 657, that a copyright has no extra-territorial effect, does not solve this problem of manufacture since plaintiffs seek to hold defendant for what it did *here* rather than what it did abroad.

Accordingly, this court holds that the act of defendant in preparing the tape was a part of the manufacture and, consequently, an infringement for which it should respond under Section 101(e).

■ Counsel fees are awarded to plaintiffs to be determined on the incoming report of the special master and proof of the services rendered. Rose v. Bourne, Inc., D.C.S.D.N.Y., 1959, 176 F.Supp. 605, 612, aff'd, 2 Cir., 1960, 279 F.2d 79, cert. denied, 1960, 364 U.S. 880, 81 S.Ct. 170, 5 L.Ed.2d 103; Title 17 U.S.C. §§ 1(e), 116.

■ In regard to the records which were the subject of periodic royalty reports, or should have been included in such reports, the damages to be awarded pursuant to Section 1(e) shall be three times the amount found to be due as a royalty. In awarding such damages, the court has considered the intent and acts of the defendant in failing to make payment and its wilful disregard of the Copyright Act. Leo Feist, Inc. v. American Music Roll Co., D.C.E.D.Pa., 253 F. 860; Edward B. Marks Music Corporation v. Foullon, 2 Cir., 1949, 171 F.2d 905; ABC Music Corp. v. Janov, D.C. S.D.Cal., 1960, 186 F.Supp. 443; Title 17 U.S.C. § 1(e).

### Conclusions of Law

1. The court has jurisdiction of the subject matter and of the parties herein.

2. The plaintiffs are entitled, pursuant to Title 17 U.S.C. § 1(e), to an accounting from defendant of all records concerned herein manufactured by defendant and to payment of a royalty of

2¢ on each of said records manufactured by defendant serving to reproduce mechanically its copyrighted musical composition and, in addition thereto, three times the amount thereof. The amount of such royalties shall be determined in the final decree after the incoming of the special master's report.

3. The defendant is also liable to plaintiffs by reason of its joint tort in manufacture of the tapes sent abroad for such royalties as may be found in favor of plaintiffs by reason thereof. The amount of such royalties shall be determined in the final decree after the incoming of the special master's report.

4. The plaintiffs are entitled to counsel fees, the amount of which shall be determined in the final decree after the incoming of the special master's report. Plaintiffs shall also be entitled to costs.

5. The plaintiffs are entitled to an interlocutory decree which shall provide for reference to a special master to ascertain the amount of such royalties, and the further sums for which defendant is liable to each of the plaintiffs.

Settle interlocutory decree pursuant to the provisions herein and upon notice.