27 F.3d 566
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CABLEVISION OF MICHIGAN, INC., Plaintiff-Appellant,
v.
SPORTS PALACE, INC., d/b/a// Sports Forum, Defendant-Appellee.
 No. 93-1737.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1994.
 
 Before: MARTIN and JONES, Circuit Judges; and CONTIE, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Cablevision of Michigan, Inc. brought suit under the Communications Act, claiming that Sports Palace, Inc. improperly broadcast a pay-per-view boxing match to patrons of its bar, the Sports Forum. Cablevision now appeals from the district court's grant of summary judgment in favor of Sports Palace.
 
 
 2
 * Cablevision operates a cable television system in Kalamazoo, Michigan that distributes programming to subscribers within its franchise area. In addition to the monthly fee it assesses subscribers for basic services, Cablevision charges a separate fee for premium channels such as HBO and for "pay-per-view" events. As Cablevision delivers the signal for premium programming in a scrambled form, subscribing households must have an "addressable converter," which is programmed to decode the signal, in order to watch such channels. The company provides converters to viewers as part of its service package.
 
 
 3
 By entering into an agreement with The Mirage Casino-Hotel of Las Vegas, Cablevision obtained the exclusive right to broadcast the heavyweight championship fight between Evander Holyfield and James "Buster" Douglas live in Kalamazoo on October 25, 1990. Cablevision charged residential subscribers who ordered this pay-per-view event $34.95; commercial establishments were charged approximately $1,000.00. The fight was transmitted via an encrypted signal and could be viewed only by those with a converter appropriately programmed by Cablevision.
 
 
 4
 The Sports Forum is a neighborhood tavern located in Kalamazoo. While the establishment does not have cable service, it regularly shows satellite and video programming on a big-screen television. On the evening of October 25, the Sports Forum broadcast the Holyfield-Douglas fight to about sixty patrons in the bar.
 
 
 5
 The Sports Forum did not purchase the right to receive the boxing match. Instead, the bar's owner, John Nowak, was given a series of videotapes of the fight by an occasional patron known to him only as "Jerry." According to Nowak, Jerry approached Nowak earlier in the day and asked if he could play a tape of the fight on the tavern's big-screen television. Nowak responded that he had "no problems" with Jerry's idea.
 
 
 6
 Shortly after the fight began at 9:00 p.m., Jerry showed up with the first three rounds on tape. As this tape played on the bar's big-screen television, someone (Jerry's girlfriend, Nowak speculated) recorded the second installment. Jerry then transported the second tape to the Sports Forum while a third was being recorded. In all, Jerry produced three tapes in installments that enabled the Sports Forum to display the fight while it was still in progress.
 
 
 7
 Acting on a tip from a neighboring bar owner, Cablevision's System Security Supervisor, David Bartholomew, visited the Sports Forum on the night of October 25. While a baseball game was displayed on the bar's big-screen television when Bartholomew first stopped in at about 9:00 p.m., the Holyfield-Douglas fight was playing when he returned sometime after 10:00 p.m. As he sat in the bar over the next hour, Bartholomew watched a man hand a series of three videotapes to Nowak. Although able to determine that the Sports Forum received the fight only on videotape and not via its satellite antenna, Bartholomew was unable to ascertain whether the fight had been taped from Cablevision's signal.
 
 
 8
 On August 8, 1991, Cablevision filed suit against Sports Palace, Inc., d/b/a Sports Forum, in federal district court. In its complaint, Cablevision alleged that the Sports Forum unlawfully intercepted and received the signal carrying the Holyfield-Douglas fight and broadcast it to the bar's patrons for commercial advantage, in violation of 47 U.S.C. Secs. 553, 605(a). Cablevision also raised a pendent state law claim of tortious interference with prospective economic advantage.
 
 
 9
 On June 9, 1992, Cablevision moved for summary judgment on the issue of liability under Sections 553 and 605(a). Shortly thereafter, the Sports Forum filed a cross-motion for summary judgment on all claims. In an opinion dated April 26, 1993, the district court concluded that, as a matter of law, the Sports Forum did not "intercept" or "receive" any cable service within the meaning of the Communications Act. According to the district court:
 
 
 10
 it is uncontroverted that the version of the fight which Sports Forum displayed was merely a videotaped copy of a transmission. In other words, Sports Forum neither intercepted nor received a "one-way transmission" of video programming from Cablevision, as required in order for a violation of Sec. 553 to have occurred. Similarly, stated in terms of the third sentence of Sec. 605(a), Sports Forum likewise did not "receive or assist in receiving any interstate or foreign communication by radio" of Cablevision as required in order for a violation of the third sentence of Sec. 605(a) to have occurred.
 
 
 11
 Joint Appendix at 28. The court, therefore, granted Sports Forum's motion for summary judgment as to the federal claims. Declining to exercise jurisdiction over the pendent state law claim, the district court then dismissed Cablevision's complaint. This timely appeal followed.
 
 II
 
 12
 Asserting a right to enforce Sections 553 and 605(a) of the Communications Act, Cablevision now challenges the district court's grant of summary judgment in favor of the Sports Forum.[1] This Court reviews a grant of summary judgment de novo. Faughender v. City of North Olmsted, 927 F.2d 909, 911 (6th Cir.1991). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. We view all evidence before us in the light most favorable to the non-mvoing party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 13
 Cablevision contends that Sports Forum's rebroadcast via videotape of the company's cable television programming is an unlawful "interception" under both Section 553 and Section 605(a). These statutory provisions, enacted or amended as part of the Cable Communications Policy Act of 1984, were designed, in part, to deal with "a problem which [wa]s increasingly plaguing the cable industry--the theft of cable service." H.R.Rep. No. 934, 98th Cong., 2d Sess. 83 (1984), reprinted in 1984 U.S.C.C.A.N. 4655, 4720. As the House Committee recognized, fraudulent practices, including gaining "access to premium movie and sports channels without paying for the receipt of those services," deprived "the cable industry of millions of dollars of revenue each year." Id.
 
 
 14
 Despite their facial similarity, Sections 553 and 605(a) reach different conduct. In pertinent part, Section 553 provides:
 
 
 15
 [n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
 
 
 16
 47 U.S.C. Sec. 553(a)(1). According to the legislative history, the phrase "service offered over a cable system" was intended "to limit the applicability of this section to theft of a service from the point at which it is actually being distributed over a cable system." 1984 U.S.C.C.A.N. at 4720. Section 605(a), in turn, proscribes the reception or interception of satellite cable programming "prior to, or not in connection with, distribution of the service over a cable system." Id.; see also 130 Cong. Rec. S14285 (1984) (statement of Sen. Packwood) (amendments to Section 605 "provide a strengthened statutory basis for deterring satellite video piracy"), reprinted in 1984 U.S.C.C.A.N. 4738, 4745. As relevant here, Section 605(a) provides that:
 
 
 17
 [n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
 
 
 18
 47 U.S.C. Sec. 605(a). In light of the legislative history, Section 605(a) may be read as outlawing satellite signal piracy, while Section 553 bans only the theft of programming directly from a cable system.
 
 
 19
 Neither the individual statutes nor the Communications Act set forth a definition of the key term "intercept." Given this deficiency, Cablevision vigorously urges this Court to look for guidance to Title III of the Omnibus Crime Control and Safe Streets Act, as revised by the Electronic Communications Privacy Act, which criminalizes the interception of electronic communications. See 18 U.S.C. Secs. 2510-2520. According to Cablevision, Title III, Section 553, and Section 605(a) are inextricably linked and form a cohesive statutory scheme designed to combat the theft of cable services.
 
 
 20
 For purposes of Title III, " 'intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. Sec. 2510(4). In a recent case brought under 18 U.S.C. Sec. 2511, this Court considered the videotaping of a face-to-face interview to be an interception within the meaning of Title III. See Boddie v. American Broadcasting Cos., Inc., 881 F.2d 267, 268 (6th Cir.1989), cert. denied, 493 U.S. 1028 (1990); see also Stockler v. Garratt, 893 F.2d 856, 858 (6th Cir.1990) (tape recording of conversation considered interception under Sec. 2511). Relying in part on Stockler and reading both Section 553 and Section 605(a) as establishing a congressional preference for operator control over cable programming, Cablevision argues that Congress' use of the term "intercept" to include the recording of electronic communications necessarily means that the videotaping of a pay-per-view event is similarly unlawful. We are not persuaded. Section 553 prohibits only the interception of signals "actually being distributed over a cable system." See U.S.C.C.A.N. at 4720. The term "cable system" has been narrowly defined as "a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment[,] that is designed to provide cable service which includes video programming and which is provided to multiple subscribers within a community." 47 U.S.C. Sec. 522(6). Because Sports Forum received the Holyfield-Douglas fight on videotape, not by tapping into a cable transmission path, the district court properly concluded that the defendant's conduct fell outside the reach of Section 553.
 
 
 21
 With regard to Section 605(a), the statute protects only cable programming as it is being transmitted via satellite signal. Section 605(a) bans the interception of "any radio communication," which Congress has defined as "the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds." 47 U.S.C. Sec. 153(b) (emphasis added). As the statute speaks of transmission, and the legislative history indicates that Congress was concerned with the piracy of satellite signals, 1984 U.S.C.C.A.N. at 4720, any rebroadcast of cable programming via videotape is not an interception within the meaning of Section 605(a). Given that there was no interception, the mere fact that the bar "divulge[d]" or "publish[ed]" the Holyfield-Douglas fight cannot make it liable under Section 605(a). See Smith v. Cincinnati Post & Times-Star, 475 F.2d 740, 741 (6th Cir.1973) (Section 605 "is violated only when a person both intercepts and divulges a communication"); see also California Satellite Systems v. Seimon, 767 F.2d 1364, 1366 (9th Cir.1985) ("liability under section 605 requires proof that a defendant has '(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff' "). Accordingly, the district court properly granted summary judgment on this claim.
 
 
 22
 Finally, Cablevision's resort to Title III's definition of the term "intercept" is unconvincing.[2] Application of this definition is expressly limited by Title III itself. 18 U.S.C. Sec. 2510 ("[a]s used in this chapter ..."). Moreover, this Court reads "statutory terms in light of their plain meaning." Wright v. Finance Service of Norwalk, Inc., Nos. 91-4156, 92-3004, 1994 U.S.App. LEXIS 7815, at * 3 (6th Cir. April 19, 1994) (en banc) (citation omitted). We thus presume that "intercept" is used in its ordinary sense: "to stop, seize, or interrupt in progress or course or before arrival." WEBSTER'S NEW COLLEGIATE DICTIONARY 601 (1977); see also Goldman v. United States, 316 U.S. 129, 133-34 (1942) (observing that "intercept" under the Communications Act "indicates the taking or seizure by the way or before arrival at the destined place"), overruled on other grounds, Katz v. United States, 389 U.S. 347 (1967). As there is no suggestion here that Sports Forum seized cable signals in transition or waylaid satellite signals, the district court properly concluded that Cablevision's injuries were not redressable under the Communications Act.
 
 III
 
 23
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 The court below dedicated a considerable portion of its opinion to resolving the question of whether Cablevision has standing to sue under Sections 553 and 605(a). Concluding that Cablevision was a "person aggrieved" within the meaning of these statutes, the district court determined that the company was entitled to have the court decide the merits of the dispute. Neither party contests this finding on appeal
 
 
 [2]
 This reliance on Title III may also be misplaced. See United States v. Meriwether, 917 F.2d 955, 960 (6th Cir.1990) (concluding that once transmission of pager message had ceased, "the subsequent retrieval of the message was not an 'interception' as contemplated by the drafters" of Title III)