**ON COMMAND VIDEO COR-
PORATION, Plaintiff and
Counterdefendant,**

v.

**COLUMBIA PICTURES INDUSTRIES,
Paramount Pictures Corporation,
Twentieth Century Fox Film Corporation, Universal City Studios, Inc., the
Walt Disney Company, and Warner
Brothers, Inc., Defendants and Counterclaimants,**

**Embassy Pictures, Defendant.**

**No. C–89–4022 SAW (JSB).**

United States District Court,
N.D. California.

Nov. 14, 1991.

Jeffrey King, Jeffrey Poston, Bickel & Brewer, Washington, D.C., Michael Healy, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for plaintiff and counterdefendant.

Robert D. Raven, Michael A. Jacobs of Morrison & Foerster, San Francisco, Cal., Paul Goldstein, Stanford Law School, Harvey Shapiro of Sargoy, Stein, Rosen & Shapiro, New York City, Robert Kuenzel, Proskauer, Rose, Goetz & Mendelsohn, San Francisco, Cal., Carole Hander, Arthur Silber, Proskauer, Rose, Goetz & Mendelsohn, Los Angeles, Cal., for defendants and counterclaimants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

Plaintiff seeks a declaratory judgment that its hotel video-movie viewing system does not infringe defendants' copyrights in the movies shown through the system. All but one of the defendants have joined to counterclaim for damages for copyright infringement by plaintiff's system.[1] Before the Court are cross-motions for summary judgment on the issue of liability. Plaintiff, the designer and builder of an innovative video viewing system currently installed in a number of hotels, insists that a hotel occupant's viewing of one or more of defendants' movies through its system does not constitute a "public performance" under the 1976 Copyright Act, 17 U.S.C. § 101 et seq. Defendants, seven major United States movie companies, contend that such viewings do constitute public performances and that plaintiff's system therefore violates defendants' exclusive right of public performance under § 106(4) of the Act.

### I. Facts

The material facts of this case are not in dispute. On Command has developed a system for the electronic delivery of movie video tapes. The system consists of a computer program, a sophisticated electronic switch, and a bank of video cassette players ("VCPs"), all of which are centrally located in a hotel equipment room. The VCPs are connected to the hotel's guest rooms by wiring. The computer program directs the electronic switches so that a particular VCP will be dedicated to the guest room where a particular movie is requested. Each VCP contains a video tape. When a guest requests a particular movie, the computer identifies the VCP containing that movie, switches the VCP to that particular room, and starts the movie video.

A hotel guest operates the system from his or her room by remote control. After the television is turned on, the screen lists a menu of available movies. The guest selects a movie by entering the appropriate code on the remote control. Once a particular video is selected, that video selection disappears from the menu of available videos displayed on all other television sets in the hotel. The video is seen only in the room where it was selected by the guest. It cannot be seen in any other guest room or in any other location in the hotel. The viewer cannot pause, rewind, or fast-forward the video. When the movie ends, it is automatically rewound and then immediately available for viewing by another hotel guest.

The only components of the system installed in the guest rooms are the handheld remote control and a microprocessor in the television set. When a guest checks in to the hotel, the hotel clerk uses a front-desk terminal connected to the On Command computer program to activate movie transmission to the appropriate room. At the guest's request, the clerk can prevent the transmission of adult movies to a room or deactivate service to a room altogether. The apparent advantages On Command's system enjoys over existing closed-circuit hotel video systems with pre-set movie times, such as "Spectravision," are the larger variety of movies available for viewing and the guests' freedom to watch them on their own schedule. On Command's system also eliminates the effort and potential guest embarrassment of in-house

---

1. Embassy Pictures does not join as a counterclaimant. According to plaintiff, Embassy was originally named as a defendant but has since changed its name, was not served with the complaint, and is not a party to this suit at this time.

hotel video rental programs, in which VCPs are installed in individual rooms and guests must physically rent videos from the hotel staff.

## II. Discussion

A copyright owner has the exclusive right "to perform the copyrighted work publicly" or to authorize any such public performance. 17 U.S.C. § 106(4). What constitutes a public performance is defined by the Copyright Act in two clauses. Under clause (1), the "public place" clause, a performance is public if it occurs

> at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered.

17 U.S.C. § 101. Under clause (2), the "transmit" clause, a performance is public if someone

> transmit[s] or otherwise communicate[s] a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process.

*Id.* Under the transmit clause, a performance is public "whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times." *Id.*

Both plaintiff and defendants base their motions for summary judgment on favorable interpretations of these clauses. Both also rely heavily on the Ninth Circuit's decision in *Columbia Pictures v. Professional Real Estate*, 866 F.2d 278 (9th Cir. 1989). This Court must therefore determine whether On Command's system results in the public performance of defendants' movies under the statutory clauses and *Professional Real Estate.*

### A. *The Public Place Clause.*

 *Professional Real Estate* held that hotel guest rooms are not "public places" for the purposes of the Copyright Act. 866 F.2d at 280. Defendants do not challenge this holding. Rather, defendants argue that because On Command's system comprises components dispersed through-

out a hotel—*i.e.,* the command center is located in a hotel equipment room, the hotel operator's terminal is in the front lobby, the transmission wiring is installed throughout the walls and ceilings—the relevant place of performance is not the individual hotel rooms but the entire hotel, which defendants contend is a public place under the language of the Act. This argument is unavailing. At least for the purposes of public place analysis, a performance of a work does not occur every place a wire carrying the performance passes through; a performance occurs where it is received. Accepting defendants' argument would eviscerate both the concepts of "performance" and "public place." The Act defines the performance of a motion picture as the "show[ing of] its images in any sequence or to make the sounds accompanying it audible." 17 U.S.C. § 101. A movie video is thus performed only when it is visible and audible. In On Command's system, this viewing and hearing occurs only in an individual guest room. That can be the only relevant place of performance for public place analysis. Since hotel guest rooms are indisputably not public places for copyright purposes, On Command's system results in no public performances under the public place clause.

### B. *The Transmit Clause.*

 Public performance of defendants' movies under this clause occurs if On Command "transmits" the movies "to the public." Under the Copyright Act, to "transmit" a performance is

> to communicate it by any device or process whereby images or sounds are received beyond the place from which they are sent.

*Id.* Plaintiff's argument that On Command's system involves not "transmissions" but "electronic rentals" similar to patrons' physical borrowing of videotapes is without merit. On Command transmits movie performances directly under the language of the definition. The system "communicates" the motion picture "images and sounds" by a "device or process"—the equipment and wiring net-

work—from a central console in a hotel to individual guest rooms, where the images and sounds are received "beyond the place from which they are sent." *See also Professional Real Estate*, 866 F.2d at 282 n. 7. The fact that hotel guests initiate this transmission by turning on the television and choosing a video is immaterial.

On Command's video transmissions are also "to the public" for the purposes of the transmit clause. Hotel guests watching a video movie in their room through On Command's system are not watching it in a "public place" but they are nonetheless members of "the public." *See Columbia Pictures Industries, Inc. v. Redd Horne*, 568 F.Supp. 494 (W.D.Pa.1983), *aff'd* 749 F.2d 154, 159 (3rd Cir.1984) ("the transmission of a performance to members of the public, even in private settings such as hotel rooms ... constitutes a public performance") (citing H.R.Rep. No. 1476, 94th Cong., 2d Sess. at 64 (1976) ["1976 House Report"]); *ESPN, Inc. v. Edinburg Community Hotel, Inc.*, 735 F.Supp. 1334, 1340 (S.D.Tex.1986) ("The [1976] House Report ... on the Copyright Act makes explicit that performances to occupants of hotel rooms fall within the definition of a public performance"). This is because the relationship between the transmitter of the performance, On Command, and the audience, hotel guests, is a commercial, "public" one regardless of where the viewing takes place. The non-public nature of the place of the performance has no bearing on whether or not those who enjoy the performance constitute "the public" under the transmit clause.

A performance may still be public under the transmit clause "whether the members of the public ... receive it in the same place or in separate places and at the same time or at different times." 17 U.S.C. § 101. A 1967 Report by the House of Representatives reveals that Congress added this language to the transmit clause to cover precisely the sort of single-viewer system developed by plaintiff:

> [This language makes doubly clear that] a performance made available by transmission to the public at large is "public"

even though the recipients are not gathered in a single place, and even if there is no direct proof that any of the potential recipients was operating his receiving apparatus at the time of the transmission. The same principles apply whenever the potential recipients of the transmission represent a limited segment of the public, such as the occupants of hotel rooms....; they are also applicable where the transmission is capable of reaching different recipients at different times, as in the case of sounds or images stored in an information system and capable of being performed or displayed at the initiative of individual members of the public.

H.R.Rep. No. 83, 90th Cong., 1st Sess. at 29 (1967). Thus, whether the number of hotel guests viewing an On Command transmission is one or one hundred, and whether these guests view the transmission simultaneously or sequentially, the transmission is still a public performance since it goes to members of the public. *See also Redd Horne*, 749 F.2d at 159 (transmissions of videos to private viewing booths occupied by one to four persons infringing under transmit clause); *Paramount Pictures Corp. v. Labus*, 16 U.S.P.Q.2d (BNA) 1142, 1147, 1990 WL 120642 (W.D.Wisc.1990) (hotel's distribution of unauthorized copies of video cassettes to single guest violated copyright owner's exclusive right to distribute work to "the public"). On Command therefore "publicly performs" defendants' movies under the meaning of the transmit clause.

C. *Defendants' Ownership of Copyright.*

Plaintiff raises defendants' ownership of copyright in a number of the movies in question as a disputed issue of fact. Defendants concede that their copyright in five (5) of these movies is insufficiently documented in the submitted exhibits and ask leave to supplement their submissions accordingly. Since defendants seek summary judgment only on the issue of liability, however, it is unnecessary to postpone the Court's ruling until the documentation regarding these five movies is complete.

The failure of proof regarding these movies bears ultimately on the question of remedies, which will be awarded only for those infringements properly proven.

Accordingly,

IT IS HEREBY ORDERED that:

(1) Defendants' motion for summary judgment is GRANTED;

(2) Plaintiff's motion for summary judgment is DENIED;

(3) Further proceedings on injunctive relief and damages are scheduled for hearing before this Court on January 16, 1992, at 2:15 pm. Defendants must serve and file any supplemental documentation proving copyright ownership on or before December 16, 1992. Plaintiff's response, if any, must be served and filed on or before December 31, 1992.