LOS ANGELES NEWS SERVICE,
Plaintiff,

v.

REUTERS TELEVISION INTERNA-
TIONAL, LIMITED; Visnews Interna-
tional (USA), Limited; Reuters America
Holdings, Inc.; Reuters America, Inc.,
Defendants.

No. CV–95–1073–KMW (Ex).

United States District Court,
C.D. California.

July 22, 1996.

William A. Bergen, Law Offices of William A. Bergen, Auburn, CA, for Plaintiff Los Angeles News Service.

Louis P. Petrich, Robert S. Gutierrez, Leopold, Petrich & Smith, A Professional Corporation, Los Angeles, CA, Patricia Duncan, Burbank, CA, for Defendants Reuters Television International, Limited; Visnews International (USA), Limited; Reuters America Holdings, Inc.; Reuters America, Inc.

### ORDER GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING IT IN PART

WARDLAW, District Judge.

Plaintiff Los Angeles News Service ("LA News") has sued Defendants Visnews International (USA), Limited ("Visnews"), Reuters Television International, Limited, Reuters America Holdings, Inc., and Reuters America, Inc. ("Reuters" or "the.Reuters defendants").[1] It alleges that they violated the Copyright Act and the Federal Communications Act by copying its video footage of the Los Angeles riots that occurred after the acquittal of the police officers accused of beating Rodney King and by distributing it in the United States and abroad.

Visnews and Reuters (collectively, "Defendants") have filed a motion for summary judgment, arguing that they cannot be liable for extraterritorial copyright infringement and that the fair use doctrine precludes a finding of domestic copyright infringement. They also argue that they did not violate the Federal Communications Act because they did not intercept a satellite or radio signal. The Court **GRANTS** this motion in part and **DENIES** it in part. It holds that Defendants are not liable under American copyright law for damages that arise extraterritorially as the result of a domestic infringement. However, it finds that the fair use doctrine does not preclude their liability for the domestic infringement. Although LA News has proven domestic liability, it may not recover actual damages because it has not submitted admissible evidence that

---

**1.** Despite the Court's request at oral argument that the parties distinguish among the Reuters defendants, they did not do so. Thus, the Court does not distinguish among them here.

any unauthorized uses of its works are attributable to Defendants' infringing activities. Finally, the Court holds that Defendants did not intercept a satellite signal, so they did not violate the Federal Communications Act.

## I. BACKGROUND

### A. Facts and Contentions

#### 1. Filming of Riots

Robert and Marika Tur are freelance reporters who own LA News. Compl. ¶ 8. LA News produces video and audio tape recordings of newsworthy events and licenses them for profit. *Id.*

During the Los Angeles riots in April 1992, the Turs filmed four persons being beaten. They have entitled the videotape footage of the beatings: "Beating of Reginald Denny," "Beating of Man in White Panel Truck," "Beating of Man in Brown Hatchback with Rescue," and "Japanese Man in Brown Bronco Attacked by Rioters." They registered this footage with the Register of Copyrights. *Id.* ¶ 10. Of course, only the first two videotapes are at issue here.

#### 2. Defendants Obtain Riot Footage

National Broadcasting Company, Inc. ("NBC") obtained Robert Tur's permission to broadcast "Beating of Reginald Denny" and "Beating of Man in White Panel Truck." Robert Tur Depo. I at 99:9–99:14; *id.* at 106:12–18.[2] It used this footage on the *Today* show. Allan Decl. ¶ 4.

In April 1992, Visnews, a joint venture of Reuters Television Limited, NBC, and the British Broadcasting Company, had a news supply agreement with NBC News Overseas, Inc. ("NBC Overseas"). Smith Decl. ¶ 3. Under this agreement, NBC Overseas supplied Visnews with news materials, including NBC news programs that were actually telecast or had been cleared for telecast. *Id.*

When NBC broadcast the *Today* show featuring the LA News footage to its affiliates, it simultaneously transmitted the show via fiber link to Visnews' New York office. *Id.* ¶ 4. Visnews made a videotape copy of the parts of "Beating of Reginald Denny" and "Beating of Man in White Panel Truck" that NBC had included in the *Today* broadcast. *Id.* It transmitted the footage on the videotape copies to its subscribers in Europe and Africa on its early evening feed. Bergen Decl. Ex. 1 at # 7. It also transmitted copies of this videotape via fiber link to the New York City offices of the European Broadcast Union ("the Union"). Smith Decl. ¶ 5.

The Union made a videotape copy of the transmission from Visnews. In turn, it transmitted the video footage via satellite to Reuters' London branch. *Id.* ¶ 6. Reuters admits that it gave some of its subscribers copies of the LA News riot footage. Bergen Decl. Ex. 1 at # 5.

LA News claims that it did not authorize Visnews or Reuters to obtain "Beating of Reginald Denny" or "Beating of Man in White Panel Truck" from NBC.

#### 3. Attempts to Sell LA News' Riot Footage

LA News retained Phil Ramey to market its copyrighted riot footage in Europe and Asia. Ramey Decl. ¶ 3. He solicited French German, Italian, Spanish, British, and Scandinavian newspapers. *Id.* ¶ 6. He opines that he was unable to sell LA News' photos and videotapes to them because they were using video-grabs of the LA News footage that Reuters included in its transmissions to its subscribers. *Id.* A video-grab is a still shot taken from film footage. *Id.*

LA News has also submitted hearsay evidence that *USA Today* obtained and used video-grabs of LA News' riot footage from Reuters. Tur Decl. ¶ 2.[3] Additionally, Robert Tur says that personnel from Canal Plus, a French company, and ITV, an independent

---

**2.** Deposition I is Robert Tur's deposition in his litigation against NBC. Deposition II is his deposition in the instant litigation.

**3.** Tur states that he phoned the photo editor of *USA Today* and asked why the paper was run-

ning a video-grab from LA News' footage and where it obtained the video-grab. He claims that the photo editor told him that *USA Today* obtained the video-grab from Reuters.

television station in the United Kingdom, told him that Reuters was selling copies of LA News' footage of the attack on Reginald Denny. Robert Tur Depo. II at 74:1–77:5.

LA News has sued Visnews and Reuters, alleging (1) copyright infringement; (2) willful copyright infringement; and (3) violation of Federal Communications Commission statutes and regulations.

## B. The Instant Motion

Defendants have filed a motion for summary judgment, arguing that (1) extraterritorial infringement cannot violate American copyright laws; (2) the fair use doctrine precludes a finding of copyright infringement; (3) LA News has no admissible evidence that any unauthorized uses of its copyrighted works are attributable to their infringing activities; and (4) they did not violate the Federal Communications Act because they did not intercept a satellite or radio signal.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if there are not genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party resisting summary judgment has an affirmative obligation to bring forward evidence "on which the jury could reasonably find for [the non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A mere scintilla of evidence will not suffice. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must "go beyond the pleadings and show 'by her own affidavits, or by the depositions, answers to interrogatories, or admissions on file' that a genuine issue of material fact exists." *Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir.1992) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

## III. COPYRIGHT INFRINGEMENT CLAIMS

Defendants argue that LA News cannot prevail on its copyright claims as a matter of law because (1) the Copyright Act has no extraterritorial effect and (2) the fair use doctrine shields them from liability. They also argue that LA News cannot prove actual damages, so it can only collect statutory damages.

### A. Extraterritorial Infringement

■ Defendants argue that they cannot be liable under the Copyright Act for damages arising from extraterritorial infringement. The Ninth Circuit recently held that United States copyright laws do not have extraterritorial effect, so infringing actions that occur entirely outside the United States are not actionable under the Copyright Act. *Subafilms, Ltd. v. MGM–Pathe Communications*, 24 F.3d 1088, 1091 (9th Cir.1994). Specifically, the *Subafilms* court found that a defendant who domestically authorizes extraterritorial infringement cannot be contributorily liable for the extraterritorial act. *Id.* at 1092, 1098. It reasoned that an extraterritorial act does not violate American copyright laws because they do not forbid extraterritorial infringement. Therefore, a defendant who domestically authorizes extraterritorial infringement is not authorizing an illegal act.

LA News notes that the *Subafilms* court did not reach the issue of whether copyright holders are entitled to damages under the Copyright Act when they arise extraterritorially as the result of a domestic infringement. *Id.* at 1099. It asserts that Defendants are liable under the Copyright Act for extraterritorial damages that arose from the domestic infringement.

LA News correctly argues that the *Subafilms* opinion does not foreclose it from using the Copyright Act to recover all damages arising extraterritorially. Professor Nimmer has explained that copyright holders acquire an equitable interest in infringing works produced in the United States as soon as they come into being. 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*

§ 14.05, at 14–96 (1996). The "work is thereafter impressed with a constructive trust so that the plaintiff is entitled to profits accruing from the exploitation of the work anywhere in the world." *Id.* Thus, if a defendant makes videotapes of copyrighted video footage in the United States and sells these tapes in Europe, the copyright holder would be entitled to the profits from the European sales under the Copyright Act, as damages flowing from the domestic infringement, as opposed to any "extraterritorial infringement."

However, if American "copyright laws do not have any extraterritorial operation, there [can be] no cause of action and hence no right to a recovery of damages under the Copyright Act for infringements occurring outside of the United States." *Id.* In the instant case, any damages arising extraterritorially are the result of extraterritorial infringement. If the Reuters subscribers in Europe and Africa used the copyrighted footage and refused to buy it from LA News, they received it on Visnews' early evening feed or on a feed that Reuters initiated after it received a satellite transmission from the Union. The transmissions from Visnews and the Union did not violate the Copyright Act. *See Allarcom Pay Television Ltd. v. General Instr. Corp.*, 69 F.3d 381, 387 (9th Cir.1995) (holding that a defendant who transmitted copyrighted works via satellite from the United States to Canada did not complete an infringement in the United States and stating that "the potential infringement was only completed in Canada once the signal was received and viewed"). Therefore, Defendants are not liable under the Copyright Act for damages arising extraterritorially. This holding does not preclude LA News from recovering damages for extraterritorial infringement. It can seek a remedy for this infringement under the applicable foreign law.

## B. Domestic Infringement

### 1. Visnews

Visnews argues that LA News cannot show that it completed any infringing acts within the United States because the fiber link transmissions from NBC to it and from it to the Union do not violate the Copyright Act. It does not analyze whether the videotape that it made from the fiber link transmission violates the Copyright Act.

To violate the Copyright Act, a defendant must:

(1) reproduce the copyrighted work in copies or phonorecords;

(2) prepare derivative works based upon the copyrighted work;

(3) distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of ... motion pictures and other audiovisual works, ... perform the copyrighted work publicly;

(5) in the case of ... motion pictures and other audiovisual work, ... display the copyrighted work publicly; [or]

(6) in the case of sound recordings, ... perform the work publicly by means of a digital audio transmission.

17 U.S.C. § 106.

### a. Videotapes

■ By making a videotape of the fiber link transmission, Visnews reproduced the copyrighted work in a copy, thereby violating section 106. Copies "are material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." *Id.* § 101. The videotape is a material object. Visnews mechanically fixed the riot footage to it. By placing the videotape in a VCR, a viewer can perceive the footage.

Visnews reproduced LA News' copyrighted riot footage on a videotape. The videotape satisfies the statutory definition of a copy. Thus, by making the videotape, Visnews violated LA News' copyright. *See Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 449, 104 S.Ct. 774, 792, 78 L.Ed.2d 574 (1984) (holding that individual consumers who taped television programs for non-commercial use did not infringe the

copyrights on the programs but noting that if commercial actors made videotape copies of television programs for a profit-making purpose, "such use would be presumptively unfair").

■ Visnews is also contributorily liable for the infringement that the Union committed when it made a videotape of the footage from the fiber link transmission. A defendant is contributorily liable for infringement when it has actual or constructive knowledge of the infringement and it materially contributes to the infringing activity. *Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990); *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir.1984). Visnews knew that the Union would have to make a videotape of the fiber link transmission in order to use it. Furthermore, Visnews materially contributed to the infringement by transmitting the copyrighted footage to the Union.

### b. Public Performance

■ LA News has not adduced sufficient evidence to show that Visnews' fiber link transmission to the Union violated section 106 because it was a public performance. A performance is public if it occurs "at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered." 17 U.S.C. § 101. Alternatively, a performance is public if someone "transmit[s] or otherwise communicate[s] a performance or display of the work to a place [open to the public or where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered] or to the public, by means of any device or process." *Id.* "[T]he fact that only an insubstantial number of persons actually attend a performance will not derogate from its character as a public performance if under the restrictions imposed a substantial number of persons outside of a normal family circle, and its social acquaintances could have attended." 2 David Nimmer & Melville B. Nimmer, *Nimmer on Copyright* § 8.14[C], at 8–172 (1996). Additionally, the transmission must be received beyond the place from which it is sent. *Columbia Pictures Indus. v. Professional Real Estate Investors, Inc.*, 866 F.2d 278, 282 (9th Cir.1989).

The fiber link transmitted the footage from Visnews' New York office to the Union's New York office. The transmission was received beyond the place from which it was sent.

A fiber link is a secure closed digital circuit between the transmitting and receiving parties. Lokey Decl. ¶ 3. Visnews argues that its "transmissions were by physical link rather than by broadcasts over the airwaves, [so] they cannot be deemed to be 'public' performances." Motion at 21. This argument flies in the face of section 101's plain language that transmittal may be "by means of any device or process." 17 U.S.C. § 101; *see also On Command Video Corp. v. Columbia Pictures Indus.*, 777 F.Supp. 787, 789–90 (N.D.Cal.1991) (finding a violation of the Copyright Act where a system in which video cassette players located in a hotel equipment room and wired to guest rooms transmitted movies; the system did not involve a broadcast over airwaves).

However, LA News has not submitted evidence about the location of the video monitor on which the Union receives fiber link transmissions, so it cannot show that the performance was public. If the monitor is located in a small engineering room or intake room, only one or two people—an insubstantial number—could view it. If it is in a large room where many people work, any number of the Union's employees, who would not represent a normal circle of a family, could have received and seen the transmission. Because LA News has not explained where the Union's monitor is located, the Court has no evidence on which to find that a substantial number of people could have seen the copyrighted footage.

■ LA News also fails to show that the fiber link transmission violates section 106 because it is a distribution. A distribution is the dissemination of copies of a work to the public. *Agee v. Paramount Communications, Inc.*, 59 F.3d 317, 325 (2d Cir.1995). The fiber link transmitted a copy of the riot footage to the Union office. However, as it

has stated, the Court has no evidence before it on which it could find that a substantial number of people in the Union office could have viewed the riot footage.

### 2. The Reuters Defendants

■ A triable issue of fact exists about whether the Reuters defendants are liable for copyright infringement. LA News' evidence that the Reuters defendants infringed its copyright is Robert Tur's deposition testimony that he contacted someone whose name he believed to be Bob Tschnitzer, who was a Reuters photo editor in Washington, D.C.[4] Robert Tur Depo. II. at 63:11–64:15. Tschnitzer allegedly told him that "[Reuters] had taken [LA News'] photos off the television screen." *Id.* at 65:16–18. When Tur told him that this use was copyright infringement, he stated, "Well, we can use anything we want." *Id.* at 65:19. Tur later realized that he had misunderstood the photo editor's name and that Tschnitzer was actually Robert Schnitzlein. He came to this realization when he heard Schnitzlein's voice during a telephone deposition. Tur Decl. ¶ 4.[5]

The Reuters defendants claim that Tur contradicts his deposition testimony in his declaration, so neither testimony is admissible. In his deposition, Tur states that Schnitzlein told him that Reuters was using video footage. In his declaration, Tur states

that Schnitzlein told him that Reuters was using still photos. This testimony is not necessarily contradictory. Schnitzlein could have told Tur that Reuters was using both video footage and stills. Thus, the Court overrules this objection.

■ Because the Reuters defendants claim that they did not send any LA News' footage or stills to their subscribers in the United States, Tur's testimony creates a triable issue of fact about whether they infringed the Copyright Act.[6]

### C. Fair Use Doctrine

Defendants contend that even if they are liable under the Copyright Act, the fair use doctrine shields them from liability. They assert that LA News is collaterally estopped from arguing that the fair use doctrine does not apply because Judge Gadbois granted summary judgment against LA News on fair use grounds in its action against KCAL–TV for infringing the same videotapes at issue in this case.

### 1. Overview of the Fair Use Doctrine

"Any individual may reproduce a copyrighted work for a 'fair use'; the copyright owner does not possess the exclusive right to such a use." *Sony Corp.*, 464 U.S. at 433,

---

**4.** LA News' other "evidence" that the Reuters defendants infringed its copyright in the United States is Robert Tur's conversation with the photo editor from *USA Today*. Tur said that the photo editor said that *USA Today* obtained a video-grab from Reuters. His recounting of what the photo editor said is hearsay and is therefore inadmissible.

**5.** The Reuters defendants object to this evidence on the ground that Tur's attorney did not tell them that Tur was monitoring the deposition. They argue that this failure to inform violates section 631 of the California Penal Code, which prohibits wiretapping and eavesdropping. *See* Cal.Pen.Code § 631 (West 1988). Although California courts have held that this section prohibits one party to a conversation from permitting another person to monitor the conversation without the consent of the other party to the conversation, the policy underpinning these decisions is inapposite in this case. *See Ribas v. Clark*, 38 Cal.3d 355, 212 Cal.Rptr. 143, 696 P.2d 637 (1985). The *Ribas* court explained that "secret monitoring denies the speaker an important as-

pect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Id.* at 146, 696 P.2d at 640–41. Schnitzlein had no legitimate expectation that he could deny Tur access to the firsthand dissemination of his statements because Tur had legal access audio tapes and transcripts of the deposition. *See id.* (implying that a tape of a conversation is a firsthand dissemination). Thus, when Tur monitored the deposition, he did not violate Schnitzlein's right of privacy.

**6.** The Reuters defendants are not contributorily liable for Visnews' infringement. No evidence exists that they knew or should have known that Visnews infringed LA News' copyright. They were aware that the Los Angeles riots were a major news event. They likely presumed that NBC reporters and cameramen covered it, and they had a license to use NBC coverage. *See* Bergen Decl.Ex. 9 (memo from Reuters employee expressing surprise at Tur's allegations of infringement because riot footage came from NBC and NBC had not sent out an advisory against using the footage).

104 S.Ct. at 784. Section 107 of the Copyright Act lists several uses of copyrighted material that exemplify fair uses; it includes news reporting in this list. 17 U.S.C. § 107. It also sets forth four factors that courts must consider when determining whether a particular use is a "fair use":

(1) The purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes;

(2) The nature of the copyrighted work;

(3) The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) The effect of the use upon the potential market for or value of the copyrighted work.

*Id.*

■ Where the district court "has found facts sufficient to evaluate each of the statutory factors considered in determining fair use," the question of whether a challenged use is fair is a matter of law. *Los Angeles News Service v. Tullo,* 973 F.2d 791, 796 (9th Cir.1992).

### 2. Collateral Estoppel

■ Defendants' argument that the doctrine of collateral estoppel should preclude LA News from arguing that the fair use doctrine does not apply is persuasive at first blush. The same tapes were at issue in Judge Gadbois' case. *See* Petrich Decl.Ex. A. LA News has already had an opportunity to explain why the fair use doctrine should not apply. Continuing to relitigate this issue wastes judicial resources.

However, Defendants have not submitted evidence that KCAL used the same portions of the tapes they used. Furthermore, they are not clearly analogous to KCAL because KCAL actually reports the news while they collect reported news and resell it. KCAL and Defendants are not interchangeable, and LA News' arguments about their actions are not necessarily interchangeable. Thus, the collateral estoppel doctrine does not apply.

### 3. The Purpose and Character of the Use

■ Defendants argue that their use of the tapes was fair because their purpose was news reporting. In response, LA News contends that a finding that their purpose was news reporting does not end the inquiry because they also had a commercial purpose that tends to negate a finding of fair use.

#### a. News Reporting

The purpose and character of the use is the first factor a court examines when determining whether a use is fair. The "central purpose" of this investigation is to determine whether the new work "merely supersedes the objects of the original creation ... or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks in other words, whether and to what extent the new work is 'transformative.'" *Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 579, 114 S.Ct. 1164, 1171, 127 L.Ed.2d 500 (1994). The more transformative a work the more likely it is a fair use. *Id.* "News reporting is one of the examples enumerated in § 107 to 'give some idea of the sort of activities the courts might regard as fair use under the circumstances.'" *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 561, 105 S.Ct. 2218, 2231, 85 L.Ed.2d 588 (1985).

Defendants have superficial similarities to "news clipping services," which do not have a news reporting purpose. *See Los Angeles News Service,* 973 F.2d at 797 (holding that defendant Audio Video Reporting Services, a "news clipping service" that monitored television news programs, recorded them on videotape, and sold copies of the tapes to interested individuals did not have a news reporting purpose). Defendants monitor news programs, record the news information, and resell it to other news reporting organizations. However, the resale to news reporting organizations distinguishes them from "news clipping services." Their sole purpose is to facilitate news reporting while a "news clipping organization" archives old reports and sells them to researchers. Thus, they have a news reporting purpose.

However, their use of news footage is not very transformative. They do not sequence photos into a news story, add voiceovers explain the footage, or include editorial comment. They merely copy footage and transmit it to news reporting organizations that transform the footage.

### b. Commercial

The fact that a use was "commercial as opposed to nonprofit is a ... factor that tends to weigh against a finding of fair use." *Harper & Row Publishers,* 471 U.S. at 562, 105 S.Ct. at 2231. However, "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell,* 510 U.S. at 579, 114 S.Ct. at 1171.

Because Defendants are not making a transformative work and are using LA News' footage for a commercial purpose, this factor weighs against them.

### 4. The Nature of the Copyrighted Work

The next factor the Court must examine is the nature of LA News' footage. "Beating of Reginald Denny" and "Beating of Man in White Panel Truck" are factual, rather than fiction or fantasy. "The scope of fair use is greater when 'informational' as opposed to more 'creative' works are involved." *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1153–54 (9th Cir.1986); *see also Los Angeles News Service,* 973 F.2d at 798 (same). Moreover, the fact that LA News published the footage before Defendants used it weighs in their favor. *See Harper & Row Publishers,* 471 U.S. at 564, 105 S.Ct. at 2232 (holding that "the scope of fair use is narrower with respect to unpublished works"). Thus, this factor weighs in favor of Defendants.

### 5. The Amount and Substantiality of the Use

The third factor the Court must consider is the amount and substantiality of Defendants' use. They contend that this factor weighs in their favor because they used only a small portion of the total amount of LA News' footage. However, copying only a small por-

tion of a copyrighted work may exceed fair use if the material is taken from the "heart" of the work. *Los Angeles News Service,* 973 F.2d at 798 (citing *Harper & Row Publishers,* 471 U.S. at 564–65, 105 S.Ct. at 2232–33).

"Beating of Reginald Denny" runs for approximately four minutes. However, LA News asserts that the core or "heart" of the tape, which is the actual attack on Reginald Denny, lasts for only about forty-five seconds. It did not provide any information about the playing time or excerpts of "Beating of Man in White Panel Truck." As the Ninth Circuit has noted, however, "[i]n preparing a newscast, a television station selects the most effective and illustrative shots from the raw footage available." *Id.* at 798. Visnews copied footage from an NBC newscast. Because NBC had edited the LA News footage and selected the "heart" of it, this factor weighs against Visnews. Presumably, the Reuters defendants were using footage from the NBC newscast or another newscast, so this factor also weighs against them.

### 6. The Effect of the Use Upon the Market

The fourth fair use factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market' for the original." *Campbell,* 510 U.S. at 590, 114 S.Ct. at 1177 (*quoting* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.05[A][4], at 13–102.61). Additionally, courts must consider harm to the market for derivative works. *Harper & Row Publishers,* 471 U.S. at 568, 105 S.Ct. at 2234–35. The Supreme Court has stated that "[t]his last factor is undoubtedly the single most important element of fair use." *Id.* at 566, 105 S.Ct. at 2233.

Defendants argue that their use of the Denny videotape did not "harm" any market for the tape. Their evidence for this argument is that Judge Gadbois found that LA News entered into more than a dozen additional licenses for the tape after KCAL aired the copyrighted footage. Petrich Decl.Ex. A.

Furthermore, they note that LA News has not submitted any admissible evidence that it lost subsequent sales because Defendants transmitted the footage to their subscribers. Finally, Defendants assert that because the tapes are factual works, they do not have broad potential secondary markets that create a greater potential for commercial harm. *See Sony Corp.,* 464 U.S. at 455 n. 40, 104 S.Ct. at 795 n. 40.

LA News cannot prove loss of subsequent sales of the copyrighted works as a result of Defendants' actions, so it cannot show any actual adverse effect on the market for its videotape footage. However, allowing Defendants' infringing actions to go unpunished would result in a substantially adverse impact on the potential market for the original works. When a news reporting organization, like KCAL, uses LA News' footage, the use is unlikely to hurt the market for the footage. Other networks need the footage to report the story, and KCAL's use of the footage cannot lessen this need. Instead, it increases the need because it indicates that the viewing public finds the story compelling and important. As a result, competing networks will want to broadcast the story, not ignore it.

Organizations like Defendants satisfy the news organizations' need for the footage; the news organizations can buy the footage from them. When an organization buys the footage from Defendants, it does not need to purchase footage from LA News, thereby lessening the market for LA News' footage. Because Defendants' actions could result in a substantially adverse impact on the market for LA News' copyrighted footage, this factor weighs against them.

Only one of the four statutory factors for determining a fair use weighs in Defendants' favor, so the doctrine does not shield them from liability for copyright infringement. *See Los Angeles News,* 973 F.2d at 799 (find-

ing that the doctrine of fair use did not shield a defendant from liability when only one of the four statutory factors weighed in its favor).

## D. Ability to Prove Actual Damages

Because the doctrine of fair use does not shield Defendants from liability, the Court must examine whether LA News is entitled to recover actual damages for the infringement.

### 1. Law Governing Availability of Damages

In a copyright action, a plaintiff may elect to recover actual damages or statutory damages. 17 U.S.C. § 504(c)(1). It can make this election "at any time before final judgment is rendered." Id.

"Actual damages are defined as 'the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement.'" *United States v. King Features Entertainment, Inc.,* 843 F.2d 394, 400 (9th Cir.1988). The copyright holder has the initial burden of "establish[ing] with reasonable probability the existence of a causal connection between the infringement and a loss of revenue...." *Harper & Row Publishers,* 471 U.S. at 567, 105 S.Ct. at 2234. If it makes this showing, "the burden properly shifts to the infringer to show that this damage would have occurred had there been no taking of copyrighted expression." *Id.*

### 2. Application of Law Governing Actual Damages

 LA News has not established with reasonable probability the existence of a causal connection between the infringement and a loss of revenue because all of its "evidence" of this causal connection is inadmissible.[7]

Robert Tur's testimony that *USA Today* obtained a still photo from Reuters is inad-

<hr/>

7. LA News "evidence" of damages arising extraterritorially is irrelevant in light of the Court's holding that it has a cause of action under foreign law, not American law, to recover these damages. Nevertheless, the Court notes that the evidence of extraterritorial damages is inadmissible.

Phil Ramey's statement that he was unable to sell LA News' photos to European news agencies because they had already used video-grabs that they obtained from Reuters is inadmissible. LA News has not introduced evidence "sufficient to support a finding that [Ramey] has personal knowledge" that (1) these news agencies obtained video-grabs from Reuters and (2) they refused to buy footage from him because they had the video-grabs. Fed.R.Evid. 602.

missible hearsay. He claims that a photo editor told him that *USA Today* obtained the still from Reuters. LA News is offering this statement to prove the truth of the matter asserted. Fed.R.Evid. 801(c).

The Court notes that Robert Tur's testimony that Robert Schnitzlein stated that Reuters was selling and distributing video footage or stills in America does not establish actual damages unless LA News shows that someone bought footage or stills from it.

LA News has failed to meet its burden of proving actual damages, so, at most, it is entitled to statutory damages.

## IV. FEDERAL COMMUNICATIONS ACT CLAIM

■ LA News alleges that Defendants "intercepted and retransmitted a remote broadcast feed belonging to" it, violating the Federal Communications Act. Compl. ¶ 29. Defendants argue that they are entitled to summary judgment on this claim because they did not intercept anything. LA News does not mention this claim in its opposition.

Section 605(a)(2) of the Federal Communications Act provides that: "No person not authorized by the sender shall intercept any radio communication and divulge or publish its existence or contents to any person...." 47 U.S.C. § 605(a).

Defendants have not violated section 605(a). First, this section outlaws satellite and radio signal piracy. *See Cablevision v. Sports Palace, Inc.*, No. 93–1737, 1994 WL 245584, at *3–4 (6th Cir. June 6, 1994) (construing legislative history and determining that Congress was concerned with satellite signal piracy). It is uncontroverted that Defendants initially obtained LA News' footage from a fiber link system. This system is a physical link, not a radio or satellite signal. Thus, they did not intercept a radio communication.

Second, their actions do not satisfy the definition of "interception." The plain meaning of intercept is to waylay or seize before arrival. *Id.* at *4. LA News has adduced no evidence that Defendants waylaid satellite or radio signals. Instead, the Visnews office was the intended destination of the NBC transmission.[8]

Because Defendants did not intercept a satellite or radio signal, they did not violate section 605. *See California Satellite Sys. v. Seimon*, 767 F.2d 1364, 1366 (9th Cir.1985) (holding that failure to prove interception precludes a finding of liability under section 605 even if the defendant divulged a communication transmitted via a radio signal).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment in part and **DENIES** it in part. It orders Defendants to submit a proposed judgment consistent with this order within ten days of receiving it. It also orders Defendants to review their pending motions in limine and to withdraw those that this order moots.

---

Robert Tur's testimony that film makers from Canal Plus told him that they would not purchase "Beating of Reginald Denny" from him because they had obtained it from Reuters is hearsay.

**8.** Even if Reuters copied LA News' footage from television broadcasts, it did not violate section 605. *See Cablevision*, 1994 WL 245584, at *4 (holding that videotaping a pay-per-view prize fight is not an interception).