**LOS ANGELES NEWS SERVICE,**
**Plaintiff–Appellant,**

v.

**REUTERS TELEVISION INTERNATIONAL LIMITED; Visnews International (USA) Limited; Reuters America Holdings, Inc.; Reuters America Inc., Defendants–Appellees.**

No. 02–56956.

United States Court of Appeals, Ninth Circuit.

Submitted April 22, 2003.*

Filed Aug. 21, 2003.

As Amended on Denial of Rehearing Oct. 7, 2003**.

George T. Caplan, Kaye Scholer LLP, Los Angeles, CA, argued the cause and filed briefs for the appellant.

Robert C. Vanderet, O'Melveny & Myers LLP, Los Angeles, CA, argued the cause for the appellees. Paul B. Salvaty and Vanessa Koury were on the brief.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a).

** Judge Silverman voted to grant the petition for rehearing and to deny the petition for rehearing en banc. Judge Reed voted to deny

Before: O'SCANNLAIN, SILVERMAN, Circuit Judges, and REED,*** District Judge.

Opinion by Judge O'SCANNLAIN; Dissent by Judge SILVERMAN

O'SCANNLAIN, Circuit Judge:

We must decide whether a news organization may recover actual damages under the Copyright Act for acts of infringement that mostly occurred outside the United States.

I

The copyrighted works at issue here ("the works") are two video recordings, "The Beating of Reginald Denny" and "Beating of Man in White Panel Truck," which depict the infamous events at Florence Ave. and Normandie Blvd. during the 1992 Los Angeles riots. Los Angeles News Service ("LANS"), an independent news organization which produces video and audio tape recordings of newsworthy events and licenses them for profit, produced the works (and two other videotapes not at issue here) while filming the riots from its helicopter. LANS copyrighted the works and sold a license to rebroadcast them to, among others, the National Broadcasting Company ("NBC") network, which used them on the *Today Show*.

Visnews International (USA), Ltd. ("Visnews") is a joint venture among NBC, Reuters Television Ltd., and the British Broadcasting Company ("BBC"). Pursuant to a news supply agreement between NBC and Visnews, NBC transmitted the *Today Show* broadcast by fiber link to Visnews in New York; Visnews made a videotape copy of the works, which it then transmitted via satellite to its subscribers in Europe and Africa and via fiber link to the New York office of the European Broadcast Union ("EBU"), a joint venture of Visnews and Reuters. The EBU subsequently made another videotape copy of the works, and transmitted it to Reuters in London, which in turn distributed the works via video "feed" to its own subscribers.

LANS sued Reuters Television International, Inc., Reuters America Holdings, Inc., Reuters America, Inc. (collectively, "Reuters"), and Visnews for copyright infringement and certain other claims not relevant here. The district court subsequently granted Reuters and Visnews partial summary judgment on the issue of extraterritorial infringement, holding that no liability could arise under the Copyright Act for acts of infringement that occurred outside the United States. *L.A. News Serv. v. Reuters Television Int'l, Ltd.* (*Reuters I*), 942 F.Supp. 1265, 1268–69 (C.D.Cal.1996). However, the district court held that Visnews's act of copying the works in New York was a domestic act of infringement[1] and rejected a claimed defense of fair use. *Id.* at 1269, 1271–74.

The district court further concluded that LANS had failed to prove any actual damages arising domestically and that damages arising extraterritorially were unavailable under the Act, which meant that LANS was limited to statutory damages. *Id.* at 1274–75 & n. 7.[2] After a bench trial

the petition for rehearing and suggested that the petition for rehearing en banc be denied. Judge O'Scannlain voted to deny the petition for rehearing and to deny the petition for rehearing en banc.

*** The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

1. Visnews's transmission of the works to the EBU New York office was not infringement, however. *Id.* at 1270–71.

2. The Copyright Act provides that the owner of an infringed copyright may elect "at any time before final judgment is rendered" to receive a fixed sum of statutory damages instead of the usual remedy, "actual damages and [the infringer's] profits." 17 U.S.C. § 504(c)(1).

on the issue of statutory damages, the district court awarded LANS a total of $60,000. *L.A. News Serv. v. Reuters Television Int'l, Ltd.* (*Reuters II*), 942 F.Supp. 1275, 1283–84 (C.D.Cal.1996).

LANS appealed the district court's ruling on actual damages, and Reuters and Visnews cross-appealed the fair use ruling and the statutory damages calculation. We subsequently reversed the district court's actual damages ruling, disagreeing with its interpretation of the Copyright Act's extraterritorial application. *L.A. News Serv. v. Reuters Television Int'l, Ltd.* (*Reuters III*), 149 F.3d 987, 992 (9th Cir.1998). We concluded that although the district court was correct to hold that the Copyright Act does not apply extraterritorially, an exception may apply where an act of infringement is completed entirely within the United States and that such infringing act enabled further exploitation abroad. *Id.* at 991–92. Relying on *Sheldon v. Metro–Goldwyn Pictures Corp.*, 106 F.2d 45 (2d Cir.1939), *aff'd*, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940), which held that profits from overseas infringement can be recovered on the theory that the infringer holds them in a constructive trust for the copyright owner, we reversed the grant of summary judgment. *Reuters III* at 991–92. We held that "LANS [was] entitled to recover damages flowing from exploitation abroad of the domestic acts of infringement committed by defendants." *Id.* at 992.

Turning to the other issues, we affirmed the fair use ruling and the statutory damages calculation. *Id.* at 994–96. However, we vacated the award of statutory damages so that LANS could make a new election on remand. *Id.* at 995 & n. 8. After the Supreme Court denied certiorari, *Reuters Television Int'l, Ltd. v. L.A. News Serv.*, 525 U.S. 1141, 119 S.Ct. 1032, 143 L.Ed.2d 41 (1999), the case returned to the district court, where Reuters and Visnews moved for summary adjudication of the claim for actual damages. They asserted that the *Reuters III* decision permitted LANS to recover only Defendants' profits attributable to extraterritorial infringement—not actual damages for injuries the infringements caused LANS overseas. Reuters and Visnews further asserted that no factual dispute remained as to the amount of such profits.

After a hearing, the district court agreed with Reuters and Visnews on both points and granted the motion. The court concluded that *Reuters III* had held only that LANS could recover any profits or unjust enrichment from domestic infringers, on the theory that the infringers held such profits in a constructive trust for LANS. "To permit [LANS] to recover damages other than Defendants' profits or unjust enrichment," the court stated, "would … effectively permit [LANS] to recover damages for extraterritorial acts of infringement."

Having determined that LANS could recover only Defendants' profits, if any, the district court concluded that Reuters and Visnews had reaped no such profits from their infringement. The court held that LANS's "speculative" testimony about the competitive advantage that exclusive footage gives a subscription broadcaster was insufficient to create a factual dispute. It accordingly granted the motion for summary adjudication. In its order, the district court stated that LANS could elect to take the $60,000 in statutory damages awarded in *Reuters II* and affirmed in *Reuters III*. In its haste, LANS timely appealed to this court, but failed to make the required election as to statutory damages. Because there was no "final decision," we dismissed for lack of jurisdiction. LANS subsequently cured the jurisdictional defect by making such election, and refiled its appeal with this court.

## II

■ LANS claims that the district court erred by disallowing recovery for actual damages. LANS, however, does not challenge the court's further conclusion that LANS had failed to show that Reuters and Visnews had earned any profits from the overseas infringement. Summary adjudication was therefore appropriate if the district court correctly concluded that LANS could not recover actual damages for overseas effects of Defendants' infringement.

## A

Both parties engage in detailed exegesis of our opinion in *Reuters III*. On LANS's reading, the *Reuters III* court's use of the term "damages" is dispositive. The statute uses "actual damages" and "profits" separately and distinctly, and provides that an infringer may recover both (in the ordinary case). LANS asserts therefore that the *Reuters III* court should be read as having meant what it said: "damages" means actual damages.

But LANS's interpretation does not fit with the context in which the *Reuters III* court discussed the recoverability of "damages." There, we relied on Judge Learned Hand's opinion in *Sheldon* and discussed damages entirely in the context of that case, which dealt exclusively with the recovery of the defendants' profits.

The *Sheldon* court had previously affirmed the defendants' liability for infringing the plaintiffs' copyright by incorporating their play into a movie. *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 54–56 (2d Cir.1936). After a remand, the defendants appealed the district court's decision to award the plaintiffs all the defendants' profits from exhibiting the motion picture. *Sheldon*, 106 F.2d at 48. The Second Circuit, inter alia, determined

that the profits traceable to overseas exhibition of the infringing movie should be included. Although "[a]t first blush it [seemed] that [the overseas profits] should be excluded" because the overseas exhibition of the infringing movie was not tortious under American copyright law, the court nonetheless concluded that the plaintiffs could recover the overseas profits under a different theory, based on one defendant's having made the negatives in the U.S. *Id.* at 52. The court elaborated:

> The negatives were "records" from which the work could be "reproduced," and it was a tort to make them in this country. The plaintiffs acquired an equitable interest in them as soon as they were made, which attached to any profits from their exploitation, whether in the form of money remitted to the United States, or of increase in the value of shares of foreign companies held by the defendants.... [A]s soon as any of the profits so realized took the form of property whose situs was in the United States, our law seized upon them and impressed them with a constructive trust, whatever their form.

*Id.* The *Sheldon* court relied exclusively on this rationale in holding that the plaintiffs could recover the defendants' profits from overseas exhibition.[3]

As *Sheldon* considered only an award of profits, it is counterintuitive that a court applying Sheldon's rationale, but using the word "damages" as the *Reuters III* court did, was referring consciously to "actual damages" as opposed to "profits." Indeed our prior holding in *Reuters III*, based on the *Sheldon* constructive trust theory, demonstrates that we did not use the term "damages" in that formal sense. Rather, we used "damages" as a shorthand either

---

3. Before considering what could be included and excluded in the tally of the defendants' profits, the *Sheldon* court specified that the plaintiffs would take only one-fifth of the net profits. *Id.* at 51.

for both the forms of relief that 17 U.S.C. § 504(b) makes available, *i.e.*, actual damages and defendants' profits, or only the recovery of defendants' profits. Understanding which applies requires closer analysis of *Sheldon* and its progeny.

## B

Of course, *Sheldon* did not explicitly deal with the issue of actual damages. But as LANS points out, there is some support in the Second Circuit's post-*Sheldon* case law for the recovery of extraterritorial actual damages once an act of domestic infringement is proven.

The most direct support for such position comes from *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67 (2d Cir.1988), in which the Second Circuit considered an Israeli newspaper's unauthorized reproduction of a poster copyrighted in the United States. *Id.* at 68–69. *Update Art* held, albeit without much discussion, that the defendants had failed to make any showing that the initial copying of the poster had occurred abroad; thus, in the case's procedural context,[4] the court concluded that the "predicate act" of domestic infringement had occurred and that Update Art had stated a viable copyright claim. *Id.* at 73. The court also affirmed the award of "[d]amages accruing from the illegal infringement in the Israeli newspapers." *Id.*

*Update Art*, however, is distinguishable from LANS's claim in a couple of impor-

tant respects. First, several issues of the newspaper in which the infringing reproduction appeared were circulated in the United States. *Id.* at 73 & n. 6. Second, and more importantly, the amount of damages awarded by the district court was based on defendants' profits. *Id.* at 70 & n. 4. Finally, the panel did not even discuss the distinction between damages and profits, much less cite *Sheldon*.[5] Rather, it merely concluded that the damages award could stand despite the extraterritoriality issue, which the magistrate judge had not considered in calculating the amount. *Id.* at 70.

LANS also relies on a district court case, *Famous Music Corp. v. Seeco Records, Inc.*, 201 F.Supp. 560 (S.D.N.Y.1961). There, Famous Music sued Seeco for making infringing tape recordings of its copyrighted musical work, which Seeco then exported to foreign countries, where records were manufactured from the tapes. *Id.* at 564. Applying the Copyright Act of 1909, which was superseded in 1976 by the present Act, the *Famous Music* court held Seeco liable "by reason of its joint tort in manufacture of the tapes sent abroad," and awarded "such royalties as may be found in favor of plaintiffs by reason thereof." *Id.* at 570.

LANS is correct that the *Famous Music* court did award relief equivalent to what the current Act would term actual damages.[6] However, *Famous Music*'s only analysis of the issue of extraterritori-

---

**4.** The defendants had consistently failed to respond adequately to discovery requests, and the magistrate judge accordingly entered summary judgment against them on the issue of damages. *Id.* at 70. The circuit court affirmed that sanction. *Id.* at 72.

**5.** The court did however cite to one of *Sheldon's* offspring, *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096 (2d Cir.1976).

**6.** Reuters and Visnews argue that *Famous Music* was consistent with the constructive

trust theory because a constructive trust attached to the infringing master tapes and in turn to any records made overseas from those tapes, meaning that the remedy the district court awarded was simply the value of that property held by defendants in constructive trust for plaintiff. This argument, however, stretches the term "profits" beyond reason in order to include records never sold and still in the defendants' possession.

ality came in a brief statement: "A holding ... that a copyright has no extra-territorial effect, does not solve this problem of manufacture since plaintiffs seek to hold defendant for what it did here rather than what it did abroad." *Id.* at 569. Moreover, it is incorrect to characterize this case as an application of the *Sheldon* rationale, as the court never mentioned *Sheldon.*

## C

On the whole, we conclude that *Reuters III* adhered very closely to our decision in *Subafilms, Ltd. v. MGM–Pathe Communications Co.*, 24 F.3d 1088 (9th Cir.1994) (en banc). *Subafilms* reaffirmed that the copyright laws have no application beyond the U.S. border, *id.* at 1095–98, and expressly took no position on the merits of the *Update Art* court's apparent willingness to award damages, *id.* at 1094; *see id.* at 1099.[7] LANS's appeal thus presents the precise question that *Subafilms* reserved, *Reuters III*, 149 F.3d at 991, and as the prior panel recognized, such question should be resolved in light of the principles the en banc court laid down.

The import of such principles counsel a narrow application of the adoption in *Reuters III* of the *Sheldon* exception to the general rule. In particular, the *Sheldon* constructive trust rationale includes a territorial connection, *see Sheldon*, 106 F.2d at 52, that preserves consistency with Congress's decision to keep the copyright laws—presumably including § 504, which

prescribes remedies—territorially confined. Moreover, no rational deterrent function is served by making an infringer whose domestic act of infringement—from which he earns no profit—leads to widespread extraterritorial infringement, liable for the copyright owner's entire loss of value or profit from that overseas infringement, particularly if the overseas infringement is legal where it takes place. *See Subafilms*, 24 F.3d at 1097–98 (warning of the disruption to American foreign policy interests and to the policy of domestic enforcement expressed in the Berne Convention that extraterritorial enforcement would cause). Moreover, the resulting over-deterrence might chill the fair use of copyrighted works in close cases.

LANS counters that the assessment of damages based on a domestic act of infringement having had consequences in foreign territories is legitimate under "traditional tort principles." However, it offers no direct support for the proposition that those principles compel the extension of relief—legal or equitable—beyond the boundaries where Congress declared that liability stops.[8] Its policy arguments to the contrary seem largely a complaint about the failure of Congress to make the copyright laws—those creating both rights and remedies—applicable extraterritorially.[9]

## III

■ Accordingly we read *Reuters III* to allow only a narrow exception for the re-

7. *Subafilms* also suggested that federal question jurisdiction under the copyright laws may not be coextensive with legislative jurisdiction under those laws, *i.e.*, the reach Congress has chosen to give to American intellectual property statutes. *See id.* at 1091 n. 5 (analogizing to *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 813, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (Scalia, J., dissenting), an opinion that discussed the distinction in the context of the antitrust laws, which do have some extraterritorial application).

8. On this point, LANS cites *Famous Music*, 201 F.Supp. at 568–69, but that case applied "traditional tort principles" in adjudicating liability rather than in imposing damages.

9. *See, e.g.*, Jane C. Ginsburg, *Extraterritoriality and Multiterritoriality in Copyright Infringement*, 37 Va. J. Int'l L. 587, 598 (1997) (criticizing *Reuters III* for creating a parallel arbitrary distinction).

covery of the infringer's profits to *Subaf-ilms*'s general rule against extraterritorial application. We conclude therefore that the Copyright Act does not provide LANS recovery for actual damages resulting from Reuters's and Visnews's infringement.[10]

AFFIRMED.

SILVERMAN, Circuit Judge, dissenting:

In our previous decision, *L.A. News Serv. v. Reuters Television Int'l, Ltd. (Reuters III)*, 149 F.3d 987 (9th Cir.1998), we decided the very issue the majority now re-decides the other way. At that time, we identified the issue as whether "a plaintiff may recover actual damages accruing from the unauthorized exploitation abroad of copyrighted work infringed in the United States." *Id.* at 989. We held that it could. Our mandate said, "We REVERSE the ruling barring the ·claim for extraterritorial damages and REMAND for a trial on actual damages, with directions that if LANS elects to recover actual damages, the award of statutory damages be vacated." *Id.* at 997.

The majority now holds that when we said "actual damages," we didn't mean actual damages, but only whatever profits the infringer might have realized. This new holding is not only at odds with our previous holding, but it fails to take account of the fact that the Copyright Act itself specifically uses the terms "actual damages" and "profits" separately and distinctly.[1] The district court should have

allowed LANS to do what we said it could do—prove its actual damages. For that reason, I respectfully dissent.

At this stage of the case, the majority's reliance on *Sheldon v. Metro–Goldwyn Pictures Corp.*, 106 F.2d 45 (2d Cir.1939), is puzzling. In *Sheldon*, the question of what constitutes "actual damages" wasn't an issue or even discussed. *Sheldon* was an appeal from an accounting. The sole question was whether the plaintiff could recover the profits earned by the defendant from its foreign exploitation of a motion picture that infringed the plaintiff's stage play, profits that were *discovered* during the accounting. The court held that the plaintiff could, on a constructive trust theory. "Actual damages" had nothing to do with the case.

*Subafilms Ltd. v. MGM–Pathe Communications Co.*, 24 F.3d 1088 (9th Cir.1994) doesn't shed light on this problem, either. It merely holds that there is no recovery under American copyright law for infringements that do not occur within the United States. True enough, but as we previously held in *Reuters III*, "actual damages" *can* be recovered when the infringement occurs wholly within the United States. *Reuters III* at 992, 997. That's exactly what happened here, and why we reversed for a trial at which LANS would be allowed to prove its actual damages, if any. This is not a novel concept. *See Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 70 n. 4 (2d Cir.1988); *Famous Music*

---

**10.** There are also several evidentiary rulings that the parties dispute on appeal, all of which relate to the extent of damages. Because we agree with the district court that LANS may not recover actual damages, and because we reverse an erroneous evidentiary ruling only if the admission or exclusion of the evidence was prejudicial, *see, e.g., Maffei v. N. Ins. Co.*, 12 F.3d 892, 897 (9th Cir.1993), we need not reach the evidentiary issues.

**1.** 17 U.S.C. § 504(b):

> **(b) Actual Damages and Profits.**—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.

*Corp. v. Seeco Records, Inc.,* 201 F.Supp. 560 (S.D.N.Y.1961).

There are any number of ways to compute actual damages. Neither the Copyright Act, nor our prior decision in *this* case, nor any *other* case, limits the calculation of actual damages to only the infringer's ill-gotten profits. LANS should have been allowed to put on its proof of its actual damages, as we previously held it could. I would remand for a trial on actual damages (just as we did *last* time) except *this* time, I would add that we really, really mean it.